# CHARLESTON.

## STATE v. SOMMERS *et als.*

Submitted February 22, 1916.   Decided February 29, 1916.

1. ADVERSE POSSESSION—*Forfeited Title—Color of Title—Deed by Stranger to Title.*

   A deed, even though made by a stranger to the title, may serve as color of title to an occupant of land claiming the forfeited title, under Sec. 3, Art. 13 of the Constitution. (p. 676).

2. SAME—*Forfeited Title—Color of Title—Description in Deed.*

   Such deed is sufficiently definite to answer as colorable title if it describes the tract of land by reference to lands of adjoining owners. (p. 676).

3. SAME—*Forfeited Title—Color of Title—Rights of Occupant—Proceedings by State.*

   The occupancy of a claimant of the forfeited title, whether as of the first or third class of persons described in Sec. 3, Art. 13 of the Constitution, is not affected by the issuance of summons against him in a proceeding by the State to sell the land as forfeited. His right is protected, if, at the date of the decree, the period of the required occupancy is complete and he has paid taxes for the required time. (p. 677).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Lewis County.

Suit by the State against Martha M. Sommers and others. From the decree, certain defendants appeal.

*Affirmed.*

*R. G. Linn,* for appellants.

*W. J. Smith* and *W. G. Bennett,* for appellees.

WILLIAMS, PRESIDENT:

There is involved in this proceeding by the commissioner of school lands for Lewis county, the title to a tract of 100 acres of land, more or less, claimed, on the one hand, by the heirs of Wm. R. Moneypenny, and, on the other, to be in the State, with the right of redemption in Camden Sommers and others, formerly the owners. The tract in dispute lies within the bounds of a larger tract of 1124 acres, admitted to be forfeited. The bill alleges that the 1124 acre tract was assessed with taxes for thirty or forty years next prior to 1895, in the name of John Walden and G. D. Camden, and the taxes regularly paid; that it was returned delinquent for non-payment of taxes in the years 1895 and 1896, and sold by the sheriff on the 13th of December, 1897, and purchased by the State; that it has not been redeemed and, the period of redemption having expired, has become forfeited to the State, and liable to be sold for the benefit of the school fund. It appears the same land had been sold for non-payment of taxes, in the name of the same owners, in 1882, and was purchased by G. D. Camden, who assigned his purchase to Camden Sommers. A deed therefor was made to said Sommers on the 31st of December, 1883. But the land was thereafter continued on the land books, in the name of the original owners, and was therefore properly sold for taxes in 1897, and bid in by the State. The Moneypennys were not made parties to the original bill, but were brought in by an amended bill filed at April Rules, 1909,

One Gideon Cork, who is not shown to have had any title to, or claim on the land himself, made a deed to H. L. Moneypenny, which bears date February 18, 1899, and was recorded on the same day, conveying to him "all of his (Cork's) interest in and to" a certain tract of land described as being in Lewis county on the waters of Leading Creek, and "adjoining the lands of Wm. R. Moneypenny on one side, L. Snell, Skidmore Lamb and others and supposed to contain one hundred acres, more or less." H. L. Money-

penny, who was an heir and also administrator of William
R. Moneypenny, deceased, is dead, and the other heirs of
William R. Moneypenny aver he purchased Cork's claim and
was holding it for the benefit of William R. Moneypenny's
heirs. The amended bill attacks this deed as being fraud-
ulent, and too indefinite in description of the land to answer
as colorable title. The answer of the Moneypennys denies the
fraud, and there is no proof on the subject. Hence, the
charge of fraud is eliminated. Fraud can not be inferred,
but must be proven. Although the deed does not describe
the land by corners and lines, it does describe it by reference
to lands of adjoining owners, and as being a distinct tract.
From the description given the boundary is ascertainable.
The description is sufficiently certain even for the purpose
of color. *Id certum est quod certum reddi potest. Goad* v.
*Walker,* 73 W. Va. 431.

The Moneypennys claim to have owned and occupied the
100 acres for nearly seventy-five years, but they have shown
no paper title prior to the Cork deed made in 1899; neither
do they appear to have paid any taxes on the land prior to
1899. Since then, and including that year, they have been
regularly charged with, and have paid the taxes on the land
up to, and including, the year 1909, the year they were made
parties to the suit. They prove continual occupancy of the
land, by clearing and cultivating the most of it and having
all, or nearly all, of it under fence so long, some of the wit-
nesses say, that the fence in places is almost rotted away.
The Moneypennys are, therefore, in position to claim the
benefit of the Walden and Camden forfeiture, so far as it
affects the 100 acre tract, either as the first, or the third class
of occupants described in Sec. 3, Art. 13 of the Constitution.
But it is insisted by counsel for appellants, the Sommerses,
that ten years since the execution of the Cork deed had not
expired when the summons to answer the amended bill issued,
which, counsel says, marks the beginning of the suit against
them and stops the running of the statute. Hence, counsel
insists, the Moneypennys are not in position to claim under
the first clause of Sec. 3, Art. 13 of the Constitution. The
deed bears date February 18, 1899, and the summons to
answer the amended bill issued on the 10th of February,

1909. But the issuance of summons did not stop the running of the statute; it continued to run until the court's decree. *State* v. *Harman,* 57 W. Va. 465. This is because, as was held in that case, it is not a question of adverse possession or the statute of limitations; it is the State's bounty conferred by the Constitution on the occupant. The right of transfer is superior to the right of redemption; the latter is only a gratuitous privilege extended to the former owner, while the former is a constitutional grant of the State's title.

The decree is affirmed.

*Affirmed.*