# CHARLESTON.

## STATE v. THOMPSON *et al.*

### Submitted February 29, 1916.   Decided March 14, 1916.

1. DEEDS—*Construction—General Description—Particular Words.*

    As a general rule, where the comprehensive words in a deed or grant, descriptive of the land granted, are followed by particular or specific words of description, the general description will be restrained by the particular words. (p. 770).

2. BOUNDARIES — *Location—Determination—Lines and Monuments—Title Papers.*

    The general rule that when the location of the natural objects, or the lines of a survey, called for, is doubtful or uncertain, resort may be had to extraneous or oral evidence, to show the actual intention of the parties, and that doubtful lines and corners must give way to the more certain courses or monuments called for in the title papers, has no application in a case where the evidence leaves no room for doubt as to the location of the lines or monuments called for. (p. 773).

3. TAXATION—*Forfeited Lands—Acquisition of Title.*

    Deeds or other instruments giving color of title, and possession and payment of taxes on the whole acreage covered thereby for the requisite period, as provided by section 3, article 13, of the Constitution, will entitle the claimant to the benefit of the transfer of the State's title to the forfeited lands proceeded against and covered thereby, notwithstanding such right and title was begun and matured pending the State's suit to sell the land for the benefit of the school fund. (p. 773).

Appeal from Circuit Court, Boone County.

Suits by the State against William Thompson and others. From decrees for plaintiff, the Pocahontas Coal & Coke Company, defendant, appeals.

*Reversed, decree rendered and cause remanded.*

*A. W. Reynolds, Joseph S. Clark* and *Goodykoontz & Scherr,* for appellant.

*Leftwich, Byrnside & Shaffer,* for the State.

MILLER, JUDGE:

Of the several tracts proceeded against in this cause, three only are involved in this appeal, namely, one of 100 acres, one of 600 acres, and one of 50 acres, all described as situated on the West fork of Little Coal River, and as forfeited in the name of Floyd Cook, for the non-payment of the taxes thereon for the year 1896, and to which the bill alleges the defendants J. M. Johnson and the appellant, the Pocahontas Coal and Coke Company, have conflicting claims.

The decrees of July 15, and of August 31, 1908, appealed from, denied the right and title of the Pocahontas Coal and Coke Company to the 600 acre tract, alleged to be within the boundary of a tract of 50,096 acres, and other tracts, as claimed by it, and decreed that appellee Johnson had the better right thereto and was entitled to redeem the same from the forfeiture thereof, and that he be permitted to redeem the same upon payment of the amount of taxes, damages, and costs decreed.

In his petition and answer Johnson deraigned his title to the land proceeded against, immediately by deed dated June 27, 1898, from F. C. Leftwich, special commissioner, pursuant to a decree of the circuit court of Boone County, made April 13, 1897, in the chancery cause of Stewart against said Cook, described as the same land conveyed to Cook by one L. D. Coon, March 1, 1887, and from thence back through the deed from said Coon by sundry mesne conveyances to a deed dated September 5, 1843, from Alfred Beckley, commissioner of forfeited and delinquent lands for Fayette County, to Benjamin H. Smith, for lot number 21, of the subdivision of the Rutter and Etting survey of 174,673 acres, granted to them by patent dated January 9, 1796, the same having been forfeited prior to that deed for non-payment of taxes prior to 1841, and proceeded against as forfeited, and sold and conveyed as aforesaid; and an indefinite claim is also made of some right under James A. Holley, alleged to have been a

purchaser of a part of said Rutter and Etting lands, but no papers showing title in petitioner from this source are exhibited or shown in evidence.

On the other hand the Pocahontas Coal and Coke Company, appellant, deraigns its title from numerous sources, as follows: By patent from the Commonwealth of Virginia to Edward Dillon, dated April 16, 1796, and from thence by regular chain of mesne conveyances and immediately from Edward W. Clark, and others, trustees, for the Flat Top Coal Land Association, by three deeds, the first October 15, 1901, the second December 31, 1901, and the third, correcting the second, December 29, 1902; all of which conveyances, beginning with the deed of October 15, 1895, from Charles Reeder and wife, to Edward W. Clark, made pursuant to a decree of specific performance, except the two latter deeds of 1901 and 1902, describe and convey the said Dillon patent of 50,096 acres, as it was surveyed by William T. Sarver in 1872, and which tract was never forfeited, and on which appellant, and those under whom it claims have regularly paid all the taxes charged and chargeable thereon, down to the date of the filing of its petition, to have said land dismissed out of said cause. The deeds of 1901 and 1902, referred to, purport to describe and convey said Dillon tract to appellant, not by reference to the Sarver survey, but according to the survey thereof made by M. A. Miller, surveyor, in 1884, and as so described they clearly cover the land in controversy.

The only irregularity shown in the payment of said taxes on this tract was for the year 185—, for which, on October 19, 1855, it was sold by the sheriff of Wyoming county, and purchased by Anthony Lawson and Evermont Ward, and to whom it was conveyed by L. B. Chambers, clerk of the county court of said county, by deed of December 22, 1857, and which is one of the deeds in the chain of title deraigned by appellant. Besides the said deeds appellant also alleged and proved the death of the said Edward Dillon, and a deed from his heirs to the trustees of the Flat Top Coal Land Association, of February 11, 1897, under whom appellant derived title to said tract. But this deed also describes said tract with reference to the said Sarver survey of 1872.

Besides these sources of title appellant alleged and proved

the following grants and conveyances to it or its predecessors
in title, namely: Deed of May 26, 1841, from said Alfred
Beckley, commissioner of forfeited and delinquent lands, to
Alexander Brown, for lot number 20, in the subdivision of
said Rutter and Etting grant; deed of March 17, 1847, from
said Brown to A. H. Dodge, for 1502 acres, part of said lot
number 20, and covering a small part of the land in con-
troversy; deed of July 8, 1881, from William Thompson,
commissioner of school lands, to Jasper Workman, for said
1502 acres, forfeited to the state, and sold in proceedings
brought by him to sell the same for the benefit of the school
fund; deed of February 15, 1898, from said Workman and
wife to Edward W. Clark, Henderson M. Bell, and Joseph
I. Doran, trustees for said Flat Top Coal Land Association;
deed of September 26, 1854, from B. E. Barrett, clerk of
Boone County Court, to James A. Holley, for all the lands
in said lot number 20, of the Rutter and Etting grant, not
covered by said deed for 1502 acres conveyed to A. H. Dodge,
and 7000 acres thereof conveyed to Joshua R. Eaton, the land
thereby conveyed covering a tract known as the A. H. Dodge
500 acre tract, in the northwestern corner of said lot number
20, and the larger portion of the land in controversy on this
appeal.    The title thus acquired by said Holley, by subse-
quent conveyances, became invested in Calvin Pardee and
others, who by deed of December 31, 1898, conveyed the same
to said Clark, Bell, and Doran, trustees, from whom, or their
successors, the appellant, by the three deeds aforesaid acquired
their right and title to the land in controversy.    Another
source of title is the declaration or disclaimer in writing of
L. D. Coon, of April 24, 1884, made in settlement of a suit
brought against him and others, by Charles Reeder, the owner
of the 50,096 acre Dillon grant, and under whom appellant
claims title, disclaiming to hold adversely to said Reeder any
portion of the 1600, (1502), acres of land lying within the
interlock of said Dillon patent, provided that his tenants, Cook
and Harper, then living on said 1600 acres, should not be
disturbed should it thereafter appear that the land they were
occupying was within the said Reeder survey of 50,096 acres,
and if they were, then they should not be regarded as holding
adversely to said Reeder's title.    Also a deed from said Coon

to said trustees, of June 14, 1897, recorded in said Boone County, in Deed Book ''R'', page 151, conveying to said trustees all his right, title and interest in and to all that part of the land claimed by him within the lines of the Dillon survey; but this deed is not filed or proven by the record.

Another muniment of title relied on by appellant is the decree of the circuit court of Boone County, of October 10, 1898, in the ·case of State v. Marietta Eaton and sixteen other cases, in which the said Clark, Bell, and Doran, trustees, intervened, and adjudging them, and those under whom they claimed title, to have had the actual, open, notorious, visible, continuous and exclusive possession of what is known as the Edward Dillon grant of 50,096 acres for much more than.ten years next before the institution of each and all of said suits, and to have paid all taxes charged and chargeable thereon from the year 1867, (the date of the sale· thereof for taxes) down to the then present time, (except state taxes on 9000 acres thereof in Boone County, for the years 1881, 1882, and 1883), holding the same under title regularly derived from and under a grant of the Commonwealth of Virginia to Edward Dillon, dated April 16, 1796, and that each and all of the several tracts sought to be sold in the said several suits were located inside said Dillon grant, and were parts thereof, and that said trustees by virtue of their title, possession, and payment of taxes on said tract, and the provisions of section 3, of article 13, of the Constitution, had become vested of the State's title to all of the tracts so proceeded against, and that the same were not liable to· be sold, and dismissing each of said tracts out of said suits, and that said tracts be not sold and that the title of said trustees thereto be quieted.     As against the State and all other parties to said decree, appellant pleads estoppel against them to set up any right to proceed against any part of the land embraced within the boundary of said Dillon tract of 50,096 acres.

The Rutter and Etting patent of January 9, 1796, under whom Johnson claims, was older by more than three months than the Edward Dillon patent of April 16, 1796.     The two tracts overlap each other, but whether the Dillon tract was in a position at or prior to the time of the forfeiture and sale of· the Rutter and Etting tract in 184—, to take the title

of the State by transfer under the laws of Virginia, in force then and prior thereto, is not made clear, and the question is not now material. If it was the purchasers of the forfeited lands of course took nothing but color of title to any of the lands so purchased within that boundary, and their title and right would from thence be junior to the Dillon title.

The principal points of contestation here, as in the court below, have been whether two of the western lines of the Dillon tract, as surveyed by Sarver in 1872, are coincident with the lines called for in the original survey and patent based thereon; and if not so, whether appellant by its title papers is bound by the lines as run by said Sarver, surveyor, or may disregard the same and go to the true lines of the original patent?

As stated, all the deeds and title papers under which appellant claims, including the contract between Reeder and Clark, of February 29, 1884, and the deed from Reeder and wife to E. W. Clark, of October 15, 1895, made pursuant to the decree of specific performance of the United States Circuit Court, which deed in fact makes no specific reference to the Dillon grant, purport to sell and convey that tract by reference to and according to the survey thereof made by the said Sarver, the general description, Dillon grant or patent, being followed by the specific terms, as surveyed or according to the survey thereof made by the said Sarver. The said contract says in terms: "It is understood that the party of the second part (Clark) is satisfied with the survey already made by Wm. T. Sarver of the exterior bounds of said tract of land, and that the surveying to be done is only such as may become necessary to ascertain what lands within said boundary are held by a better title than that of the said Reeder by reason of adverse title and possession."

It is a well settled rule of boundary law that when general or comprehensive words are followed by particular or specific words of description the general description will as a general rule be restrained by the particular words. *Lincoln* v. *Wilder,* 29 Me. 169, citing p. 180, *Roe* v. *Vernon,* 6 East. 51, and *Moore* v. *Griffin,* 22 Me. 350; *Jones's Devisees* v. *Carter,* 4 H. & M. 184; *Robinson* v. *Braiden,* 44 W. Va. 183. We see nothing in the facts of this case to bring it within any known

exception to the general rule. We cannot say from anything found in the record that the parties to the several deeds, limiting the land conveyed to that surveyed by Sarver, intended any land not comprehended in that survey. The contract of Reeder and Clark, which was a sale by the acre, and the decree of specific performance specifically limit the land sold and decreed to be conveyed to the tract as surveyed by Sarver, and so do all the subsequent deeds with the exceptions noted. The parties had the right to so contract, whether they knew or did not know they were omitting land covered by the original grant; they may have had reason for doing so, as that the lands not granted were held by others by better title, or that the purchaser was unwilling to take and pay for any land outside the Sarver survey, or that the sellers were unwilling to convey the land not so limited in boundary. And we find it recited in one of the deeds relied on by appellant, the deed of October 15, 1895, from Edward Clark and wife to Clark, Bell, and Doran, trustees, that it was "the intention of this deed to grant and convey * * * * all of the land or interest therein granted and conveyed to the said Edward W. Clark by the above recited deed from Charles Reeder and wife, *and no more.*"

The question is therefore presented, where does the Sarver survey locate the two disputed lines of the western boundary of this Dillon tract? After leaving the acknowledged corner at "C" on the several maps filed in the record, designated as a precipice of rocks at the mouth of a branch of the South branch of Cole, and following the footsteps of the original surveyor, the call of the Dillon patent is: "S. 62 degrees W. 1400 poles crossing some small branches and an East Fork of Little Cole River, and a South-West Fork thereof to a Sycamore marked FF and WD, a birch and two sugar trees on the bank of the South West Fork, about three computed miles below Farley's Rooting Camp on said stream and near a stream and near a number of pealed trees; S. 12 degrees W. 1080 poles crossing branch of Buffalo Creek, a branch of Guyandott at one and a half miles to an ash, white walnut, two lynns, a sugar tree and buckeye in the head of a hollow, the head waters of Peter Huff's Creek", point "E" on said maps. The reverse of these calls in the Sarver survey and

in the deed from Reeder and wife to Clark, beginning at the corner at "E", are as follows: "running thence N. 12 E. crossing the Buffalo mountain at ½ mile, which mountain is also the county line betwen the counties of Wyoming and Logan; crossing a small branch of Buffalo Creek one mile at a chestnut on a hillside; crossing main Buffalo creek at one mile and 288 poles by a small birch marked as a line tree about ¼ mile below Samuel Daniels; thence two miles at a bunch of chestnut sprouts on a steep hillside between the waters of Buffalo creek and Pond fork of Coal river; thence crossing the mountain between Buffalo creek and Coal river at two miles and 150 poles by a large chestnut oak and an old line tree, also at this point crossing the line between Logan and Boone counties; thence to the Pond fork of Coal river about one-half mile below B. F. Perry's, at 1,080 poles from the last named corner (marked a dogwood); running thence N. 62 E. one mile at a pealed chestnut on top of the mountain near B. F. Perry's bear pen and also near a small pond; thence two miles to a poplar on top of the mountain between the Rock Lick and Burned Camp branches; thence three miles to a buckeye in a hollow on the waters of the west fork of Coal river; thence 4 miles to a hickory on top of the mountain between the waters of the west fork of Coal river and Hays creek, crossing the line between Boone and Raleigh counties; thence to a precipice of rocks at the mouth of Fall Rock branch of Hays creek at 4 miles 120 poles."

If the calls of the patent from the corner at "C" are followed strictly it is conceded they would take us to the point "D" on these maps, where appellant claims the true corner of the Dillon lands in fact is. The patent call is for a birch and two sugar trees on the bank of South West Fork and near a stream and near a number of peeled trees; but when Miller, agent and surveyor for appellant, was there in 1884, these monuments were not found. He seems to have run from the corner at "C" on a bearing South 66° W. the difference in degrees being accounted for by the variation of the magnetic needle between the date of the original survey in 1796, and the date of his survey, 1884, eighty eight years. The next line Miller ran on a course South 10° and twenty-two minutes, while the call of the patent is South 12° W. to the

established and known corner at "E". Conceding the corner established at "D", of course the surveyor would have to run to that corner, regardless of the bearing called for in the title papers. But reversing the call from "E", as Sarver did in 1872, and making proper allowance for the variation of the magnetic needle, which Miller proves would be about three and one half degrees, the course and distance, as Miller admits, would take us to the corner designated on said maps or plats "Sarver dogwood", and the point to which Sarver actually ran in 1872, in making his survey, and the point called for in the deed from Reeder and wife to Clark, and the point and corner shown Miller by Sarver in 1884, when the former made his survey. Other witnesses also fix this point as the corner of the Sarver survey, as pointed out to them by Sarver in his life time. Moreover, the petition and answer of appellant alleges that this corner and the line from the corner at "E" and the next line to the corner at "C" were the lines run or established by Sarver. It is insisted, nevertheless, that appellant is not bound by the Sarver survey, and that regardless thereof it is entitled to go to the limits of the true boundaries of the Dillon patent, wherever they may be located. The land in controversy lies between these two sets of conflicting lines, those run by Sarver in 1872, and those run by Miller in 1884.

To sustain them in their position counsel for appellant cite and rely upon the general rule, laid down by some of our decisions, that when the location of the natural objects, or lines of a survey, called for, is doubtful or uncertain, resort may be had to extraneous or oral evidence, to show the actual intention of the parties, and that doubtful lines and corners must give way to the more certain courses or monuments called for in the title papers. *Adams* v. *Alkire*, 20 W. Va. 480; *Lewis* v. *Yates*, 62 W. Va. 575, 576; *Mylius* v. *Raine-Andrew Lumber Co.*, 73 W. Va. 674; *Id.* 69 W. Va. 346; also *Waterman* v. *Andrews*, 14 R. I. 589; *Lincoln* v. *Wilder*, *supra; Northern Pac. Ry. Co.* v. *United States*, 191 F. R. 947.

But so far as the Sarver survey and the subsequent contracts and deeds based thereon are concerned the principles of these decisions can have no application. The record leaves no room for doubt as to the actual location of the corner at

"Sarver dogwood", and the two lines thereto run from the known and established corners at the points "C" and "E" on the record maps. Appellant's petition and answer and the evidence of its witnesses admit that these lines and corners are exactly where Johnson, appellee, claims them. Appellant's reliance is upon the supposed intention of the parties, and Sarver's alleged mistake in making his survey. But the parties contracted with reference to that survey, and sold and conveyed nothing beyond its boundary lines. Moreover, Sarver in his report of that survey says that he actually found the timber called for at the 'Sarver dogwood". He describes it as a beech. It is doubtful whether he was correct in this, for according to the copy of the patent exhibited in the record the trees called for are, a sycamore, a birch and two sugar trees near a number of peeled trees. The language of his report is, "here we found one of the corner trees called for, a Beech, we also marked a dogwood." There are some other evidences of uncertainty as to his lines, pointed out in the record of State v. Workman, heard along with this case, but we are not permitted to look into that record in disposing of this case, although by stipulation of counsel, the evidence and record of this case is made a part of the record in that case.

Upon these considerations the appellant must fail and the decree be affirmed, unless it is entitled to succeed upon a title or claim to some extent, at least, independent of those depending on the contract and deed of Reeder and wife. It is quite clear that its position is no better under the deed of 1897, from the Dillon heirs, for that deed also is limited to the survey made by Sarver. The disclaimer of Coon of 1884 is no better; it is not a grant, and if it was it is conditioned on there being an interlock between the Reeder title and the block of 1600 acres claimed by him. The later deed of Coon, relied on, we do not find in the record. Coon's title is referred for its foundation to the Rutter and Etting grant, overlapping the Dillon grant. So we do not think the claims of appellant under these titles are sustained.

But the test remains to be applied to appellant's claim made under the A. H. Dodge 500 acre tract, the A. H. Dodge 1502 acre tract, and that made under the deeds of 1901 and

1902, from Edward W. Clark, and others, trustees, to the Pocahontas Coal and Coke Company. The deeds for the 500 and the 1502 acre tracts were not made directly to the Pocahontas Coal and Coke Company, but to Edward W. Clark, and others, trustees, under whom appellant claims title to the Dillon lands, and antedate the deeds depending on the Sarver survey; so that although those tracts together appear to cover most of the land in controversy, as lying between the two lines run by Sarver and those of the Miller survey of 1884, claimed as the true lines of the Dillon grant, they confer no additional right or title on appellant. But those two claims, covered by title papers running back to the Rutter and Etting lands forfeited and sold and conveyed by Beckley, commissioner, in 1843, do strengthen the title of the trustees of the Flat Top Coal Land Association, and give their deeds to appellant, of 1901 and 1902, which without doubt cover the land in controversy, added force as muniments of title. It is claimed on behalf of appellee, Johnson, however, that there is not sufficient evidence of payment of taxes upon the lands covered by these Dodge deeds to entitle those claiming under them to take by transfer of the Constitution the title of the State to the forfeited lands of Floyd Cook. It is said particularly of the 500 acre tract, that the stipulation of counsel in lieu of the lost certificate of the Auditor, originally filed, does not cover this question of payment of taxes. This 500 acres covers most of the land in controversy; the 1502 acres, if any, only a small part thereof. But it certainly does cover a part of the land involved in the Workman case referred to, but with which we are not concerned in this suit.

But whether the evidence of payment of taxes on the 500 acres is sufficient or not, we think is unimportant in this case, for we have come to the conclusion that the Pocahontas Coal and Coke Company, if not under any other title, was, at and before the date of the decree appealed from, under the deeds of Edward W. Clark and others of 1901 and 1902, and possession and payment of taxes on the land, in a position to take by transfer the State's title to the forfeited land covered by the Johnson title papers. The decrees adjudging his land forfeited and him entitled to redeem it, and denying appellant relief, were pronounced July 15, 1908, and August

31, 1908. The two deeds on which appellant relies were dated respectively, December 31, 1901, and December 29, 1902. Both these deeds antedate the decrees appealed from more than five years, and color of title, possession and payment of taxes for five years would transfer the State's title to the forfeited land to the junior claimant, the Pocahontas Coal and Coke Company, and this notwithstanding the title claiming the benefit of the forfeiture was begun, as here, pending the suit by the State to sell the forfeited land. *State* v. *Harman,* 57 W. Va. 447, Syl. point 15; *State* v. *Sommers,* 77 W. Va. 675, 89 S. E. 1.

One of the questions considered in reaching this conclusion was whether there was sufficient evidence of payment of taxes on the whole tract covered by the Dillon survey and these deeds of 1901 and 1902, to entitle appellant to the transfer of the State's title. There is abundant evidence of possession within the boundaries of the original grant, and the evidence also satisfies us that appellant had actual, adverse and continuous possession by tenants of at least a part of the 500 acre A. H. Dodge land, covering a large portion of the Johnson 1600 acres, forfeited in the name of Cook; and besides the evidence of payment of taxes by appellant or its predecessors, on that particular tract, the evidence is complete that continuously and from the date of the deed from L. B. Chambers, clerk of the county court, to Ward and Lawson, of December 22, 1857, to the date of the decrees appealed from, the whole of the tract covered by the Dillon patent, 50,096 acres, was transferred to the land books, and continually maintained there, in the name of Ward and Lawson, or those claiming under their deed, including the Pocahontas Coal and Coke Company, appellant, and that there never was any forfeiture of that land, or any part of it for non-payment of taxes on the whole tract. And we ought to say in this connection, perhaps, that the evidence satisfies us that regardless of the Sarver survey, that the original boundary of the Dillon tract was as claimed by appellant. It was so surveyed by surveyor Harris in 1860. There is no satisfactory evidence that Sarver found the original timber at the dogwood marked by him as a corner of said tract; his report filed and relied on by Johnson says he found the original corner, but the

beech referred to by him was not the timber called for, and although a beech was found by Miller, near where Sarver claims to have marked the dogwood, the marks counted only twelve years. If we follow the footsteps of the original surveyor and run the line from the corner at "C" on the record maps, by the calls of the patent, we would come directly to the corner at "D", where Miller, surveyor, locates it, and not to the point "Sarver dogwood". Besides running from the dogwood, as Sarver did, the point "C", another known corner, could never be reached; his course, corrected for variation of the magnetic needle, would take us far away from the corner at "C".

Our conclusion is that to give appellant the right to the State's title to the forfeited Cook or Johnson land, it was not necessary that the acreage assessment should have been changed after the deeds of 1901 and 1902. Under the circumstances this was not required. The taxes on the original boundary had been and continued to be paid, and to have added to the original acreage would have amounted to double taxation. Having carried the entire tract on the tax roll for all the years preceding the decree complained of, and paid all the taxes thereon, more was not required.

These conclusions call for a reversal of the two decrees appealed from, and the pronouncement here of such decree as we think the circuit court should have rendered. The decree here will be that the decree of the circuit court be reversed, and that all the land within the boundaries of the 100 acres, the 600 acres, or the 50 acres, forfeited in the name of Floyd Cook for the non-payment of the taxes thereon for the year 1896, and purchased by the State, as lies South of the line "C", "D", and within the Dillon patent, as surveyed by M. A. Miller, and as laid down on the maps or plats "M. A . M. No. 5" and map No. 1, filed with the deposition of J. E. Wagner, be dismissed out of the suit, and that the appellee Johnson be not allowed to redeem the same from the forfeiture thereof. But as there may be portions of the said forfeited tracts lying outside of the boundary of the Dillon land and the land covered by said deeds of 1901 and 1902, and outside of the said line "C" "D" laid down on said plats, and which said Johnson may be entitled to redeem, the cause

will be remanded to the circuit court with direction to ascertain the fact and quantity of land to which said Johnson may be entitled and the amount of taxes, interest and costs required to be paid by him to redeem the same and to decree and proceed accordingly.

*Reversed, decree rendered and cause remanded.*