BANK OF QUINWOOD *et al. v.* E. W. BECKER, *Commissioner, etc., et al.*

(No. 8609)

Submitted September 7, 1937. Decided December 14, 1937.

C. R. *Summerfield* and *W. L. Lee,* for appellant.
*Mahan, Bacon* & *White,* for appellees.

FOX, JUDGE:

The appellant, Elizabeth M. Burns, complains of a decree entered by the circuit court of Fayette County in which a tract of 8 acres of land conveyed to her by H. E. Dillon, trustee, on May 7, 1932, is held to be subject to two deeds of trust, executed by J. H. Myles to trustees for the Bank of Quinwood to secure indebtedness to said bank remaining unpaid.

The cause was submitted to the court below upon an agreed statement of facts, from which it appears that on June 30, 1917, Elizabeth M. Burns conveyed to J. H. Myles a tract of 8 acres of land situated in Sewell Mountain district, in Fayette county; that on April 25, 1923, Myles conveyed said land to John Nuttall, trustee, to secure the Bank of Quinwood in the payment of his note in the sum of $2500.00, and that on December 18, 1928, the said Myles conveyed the same land to N. H. Keller, trustee, to secure said bank in the payment of his note in the sum of $1700.00, on which two notes a balance of $4,-908.59 was due as of the 12th day of November, 1935; that the said land was returned delinquent for the non-payment of taxes for the year 1924 and sold for said delinquency in the month of December, 1926, purchased by the state, and not redeemed within the time required by law; that in the month of January, 1928, acting under the provisions of Chapter 105, Section 6, Code 1923, E. W. Becker, Commissioner of School Lands for said county, instituted in the circuit court thereof a suit, the style of

which was State of West Virginia against Amanda Tuck and others, (and which will be hereafter referred to as "school commissioner proceeding"), for the purpose of selling lands, or causing lands to be redeemed, which had been acquired by the state through forfeiture or purchase, and that the tract of 8 acres so returned delinquent in the name of J. H. Myles was included in said proceeding; that J. H. Myles, the former owner of said land, then a resident of Fayette county, was made a party defendant in said suit and served with process; that neither the Bank of Quinwood nor John Nuttall and N. H. Keller, its trustees, was made a party to said suit, and that neither had actual notice or knowledge of such suit or of any proceeding therein, nor of any conveyance of the land affected thereby, until some time in the month of June, 1932, and after the date of the deed under which appellant claims title; that in said suit, a decree of sale was entered on the 24th day of July, 1928, under which the said E. W. Becker, as special commissioner, sold said land to T. A. Myles, which sale was confirmed on the 15th of January, 1929, and said land conveyed to him by said special commissioner on the 19th day of February, 1929; that T. A. Myles, on February 28, 1931, conveyed said tract of land, along with other real estate, to H. E. Dillion, Jr., trustee, to secure payment of a note executed by him to the New River Banking & Trust Company, and default being made in the payment of said note, said land was sold on the 7th day of May, 1932, and purchased by Elizabeth M. Burns, to whom it was conveyed by said trustee on the 7th day of May, 1932; that neither the Bank of Quinwood nor its trustees have been at any time in the possession of the said tract of land or paid any taxes thereon; that said land was assessed for taxes in the name of J. H. Myles to and including the year 1929, and in the name of T. A. Myles for the years 1930-1935, both inclusive; that J. H. Myles, the former owner of said land, remained in possession thereof continuously from the time he acquired said land to the date of his death in November, 1931, and that since his death the land has been in the actual and continuous possession of his widow and her children; and that the said J. H. Myles and Amanda C.

Myles occupied said property with the consent of T. A. Myles and Elizabeth M. Burns, and at no time claimed to be occupying the same adversely to the claims of the said T. A. Myles and Elizabeth M. Burns; and that no taxes were paid upon said land for the years 1928-1934, both inclusive, until the 17th day of October, 1935, when D. T. Myles, acting for Elizabeth M. Burns, paid to the auditor of the State of West Virginia taxes due for said years amounting to the sum of $154.44.

The plaintiffs are the Bank of Quinwood, a corporation, John Nuttall, trustee, and N. H. Keller, trustee, and in their bill filed at August Rules, 1932, they set up in substance the facts above set out, except those relating to the possession and payment of taxes by Elizabeth M. Burns and those under whom she claims. They aver that they were not bound by the proceedings in the suit in which the said tract of 8 acres of land was sold. E. W. Becker, Commissioner of School Lands, the widow and heirs at law of J. H. Myles, deceased, T. A. Myles, Rowena Myles, H. E. Dillon, trustee, and New River Banking & Trust Company were made parties defendant, and in the prayer of the bill, the plaintiffs ask that they "be permitted to redeem said tract of land from such delinquency or delinquencies; that the said purported deed from E. W. Becker, Commissioner of School Lands, to T. A. Myles and subsequent conveyances of said land be set aside, declared void and held for naught", and for general relief. The decree of which the appellant complains entered on the 29th day of December, 1936, goes somewhat afield from the special prayer of the bill and, in effect, gives recognition to the claim of title to said land asserted by Elizabeth M. Burns, but holds that the Bank of Quinwood was not affected by the proceeding in which the said land was sold and conveyed by E. W. Becker, special commissioner, and that she holds said land subject to the indebtedness of said bank. There is nothing in the decree complained of which sets aside this proceeding, or any conveyance made thereunder, or the subsequent conveyances in the chain of title under which the appellant claims, except in so far as it affects the right of the Bank of Quinwood to enforce its lien created

by the two deeds of trust aforesaid.

The bill of the plaintiffs is based upon the contention that they were necessary parties to the proceeding instituted by the Commissioner of School Lands of Fayette county, in which the tract of 8 acres of land was subsequently sold. By Section 6, Chapter 105, Code 1923, in effect at the date of the institution of the school commissioner's suit, and now included in Code, 37-3-10, it is provided that in such a suit "the former owner of any such tract of land at the time of the forfeiture thereof, or the person in whose name the same is forfeited, shall, if known, be made a defendant in such suit, and all persons claiming title to or interest in any such land shall also, as far as known, be made defendants therein." The plaintiffs, having their deeds of trust regularly recorded at the time of the institution of this suit, were known claimants either to the title to the land or some interest therein and were necessary parties. The failure to include them as parties rendered void any proceeding in the case affecting their interest. This is well established by many decisions of this court. *Blake* v. *O'Neal,* 63 W. Va. 483, 61 S. E. 410, 16 L. R. A. (N. S.) 1147; *Preston* v. *Bennett,* 67 W. Va. 392, 68 S. E. 45; *Neal* v. *Wilson,* 79 W. Va. 482, 92 S. E. 136; *Ellis* v. *Hagar,* 87 W. Va. 313, 104 S. E. 607; *Asbury* v. *Adkins,* 107 W. Va. 628, 149 S. E. 831, 832; *State* v. *Felty,* 109 W. Va. 384, 155 S. E. 122; *State* v. *Musgrave,* 109 W. Va. 247, 153 S. E. 515; *State* v. *Raymond,* 115 W. Va. 596, 177 S. E. 867.

In view of the form of the decree complained of, it is necessary to determine whether or not the school commissioner proceeding and the conveyance made thereunder were void. The case of *Preston* v. *Bennett, supra,* held such proceeding "void as to him (the attacking party) for want of jurisdiction and may be collaterally assailed." In *Asbury* v. *Adkins, supra,* it was held that such failure "renders void a decree of the sale of his lot and the deed executed in pursuance thereof." And to the same effect is the holding in *Neal* v. *Wilson, supra.* The prayer of the bill of the plaintiffs was that they be permitted to redeem the land covered by their deeds of trust. Such redemption could only be effected if title to the property in

question remained in the state. The state either lost title to this land through the conveyance by E. W. Becker, special commissioner, to T. A. Myles, or if such deed was void and ineffective, the title remained in the state. There can be no middle ground. The plaintiffs' right in this case depends upon their right to redeem the property, and not upon any supposed right to follow the land into the hands of a third party. If a situation has developed whereby their right to redeem the property has been lost, they can establish no other right. We are of the opinion that the failure to include the Bank of Quinwood and its trustees as parties defendant in the proceeding by the state, under which the tract of 8 acres of land was attempted to be sold, renders all proceedings therein and the deed executed in pursuance thereof void, and that the title to said land remained in the state, unaffected by such proceeding.

The plaintiffs in their bill ask to be permitted to redeem the land in question. In *Neal* v. *Wilson, supra,* and *Asbury* v. *Adkins, supra,* neither case being a regular school commissioner proceeding, and both being cases where parties sought to redeem land sold in a proceeding to which they were not made parties, this court held that the bill might be treated as a petition to redeem in the case prosecuted by the state in which the land involved was sold. Applying those cases to the present situation, the bill in this suit could have been treated as a petition to redeem, and it was also, in effect, a bill to remove a cloud upon the right to redeem which, if not removed, would eventually destroy that right. It was imperative that the plaintiffs pursue an independent remedy if they would protect their rights then existing. The right of the plaintiffs to make such redemption depends upon whether or not the title to said land was in the state at the time redemption was sought to be made, and whether that right attached at the time of the institution of the suit at bar, or at the time of the entry of the final decree in the court below.

The appellant contends that even though the school commissioner proceeding and the conveyance made thereunder be held void, she has good title to the land in ques-

540

tion under color of title, possession and payment of taxes under the third provision of Section 3, Article XIII of the Constitution. T. A. Myles obtained a deed for this land on the 21st day of February, 1929, which deed is the basis of the title under which the appellant claims. Possession of said land under color of title was held continuously from that date until the entry of the decree complained of. That possession was held by J. H. Myles and his widow and her children, with permission of T. A. Myles and Elizabeth M. Burns, by which a tenancy was created. Such possession, if continued for five years and accompanied by payment of taxes, is sufficient to effect a transfer of the state's title under the constitutional provision aforesaid. Possession to effect such a transfer need not be adverse but only actual and continuous. *State* v. *Haymond,* 84 W. Va. 292, 100 S. E. 81. The instrument under which the appellant claims to have held under color of title was the void deed of Becker, special commissioner, to Myles, and yet a void instrument is sufficient as color of title. *Flanagan* v. *Grimmet,* (Va.) 10 Gratt. 421; *Lennig's Exrs.* v. *White,* 1 Va. Dec. 873, 20 S. E. 831; *Bryant* v. *Groves,* 42 W. Va. 10, 24 S. E. 605; *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828; *Jarrett* v. *Osborne,* 84 W. Va. 559, 101 S. E. 162; *State* v. *United States Coal & Oil Company,* 86 W.Va. 256, 103 S. E. 50; *State* v.*Scott,* 91 W. Va. 513, 113 S. E. 907. Therefore, the title to said land remaining in the state, unaffected by the attempted sale thereof in the school commissioner proceeding, was subject to the transfer provisions of the Constitution; and T. A. Myles, although holding under the void deed, was in a position to take the benefit of such provisions, which position passed to appellant herein through her purchase of the Myles' claim to said land. Nor was it necessary that T. A. Myles, or those holding under him, be in position to take the benefit of the constitutional provision as to transfer of title at the time he acquired his claim to said land. His right to acquire title by transfer under the Constitution could mature thereafter. *State* v. *Harman, supra; State* v. *Sommers,* 77 W. Va. 675, 89 S. E. 1; *State* v. *Thompson,* 77 W. Va. 765, 88 S. E. 381; *State* v. *Scott, supra; State* v. *Board,* 111 W. Va. 562, 163 S. E. 57. In

*State* v. *Thompson,* it was held that the possession and payment of taxes relied upon to effect a transfer under the Constitution might both begin and mature during the pendency of a school commissioner's suit. The reasons upon which this holding is grounded are clearly discussed in *State* v. *Harmon,* wherein Judge Brannon points out that the right of transfer under Section 3, Article XIII of the Constitution is superior to any right of redemption on the part of the former owner or person having interest in any land which becomes vested in the state. The Constitution itself provides for transfer of title, whereas the right of redemption is not therein provided for, but is one created by statute and is an act of grace on the part of the state, which the Legislature has the power to destroy, but which, so long as it exists, the courts will protect. On this line of reasoning, it was held that so long as the title to land remained in the state, it was the subject of transfer to parties who might qualify under the Constitution. In *State* v. *Sommers, supra,* it was expressly held that such right of transfer could be acquired at any time prior to the entry of the decree.

It will be noted that possession under color of title, under which the appellant claims, did not begin until the 21st of February, 1929. This suit was instituted on the 22nd day of July, 1932. At that date, the appellant was not in position to assert title under any one of the provisions of Section 3, Article XIII of the Constitution. Possession had not been held for as much as five years, and no taxes had been paid for any year during which possession had been held. If she now has title, the vesting thereof was consummated after the date of the institution of this suit, and after the plaintiffs herein had sought the privilege of redeeming the land in question from the state. We are therefore confronted with the decisive question in this case, namely, shall the rights of the parties to this suit with respect to the land in question be determined as of the date of its institution or as of the date of the final decree in the court below?

It does not require citation of authority to sustain the position that, as a general rule, the rights of parties to litigation are to be determined by the situation existing

at the time of the institution of the suit or action. This is illustrated in the many forms of suits wherein statutes of limitation are applied, as well as where the title to real estate is involved, and the question of possession for a fixed period is involved. No one would contend that the statute of limitations, as to any money demand, continues to run as against the claim of a plaintiff after the date of the institution of his suit; nor in an action of ejectment, that adverse possession against the plaintiff would continue to run beyond the date of the institution of his action. When litigants assert a right, they are entitled to have such right passed upon by the court, as the situation is at the time of its assertion, and delays of judgment, or the creation of a different status occasioned by the passing of time, in no way affects the rights of the parties as they existed at the time the litigation began. However, in this jurisdiction, there would seem to be an exception to this well recognized rule where, in suits instituted by the state, the sale or redemption of lands, the title to which is vested in the state through purchase at tax sales or for non-entry, is involved. The reasons for this exception are clear. It grows out of the provisions of Section 3, Article XIII of the Constitution, and the situation existing at the time that section became effective. At that time, a large portion of the state's territory was undeveloped; land titles were unsettled; many times the same tract of land was covered by two or more grants from the Commonwealth of Virginia; there were overlapping claims, and the public policy of the state was to settle these conflicts of title in favor of those who were willing to occupy these lands and pay taxes, regardless of the date when the original grants from the Commonwealth were made. To carry out this wise policy, we have the Constitution and statutes which vest in the state title to lands forfeited for non-entry or purchased by it for non-payment of taxes, and the provisions referred to which permit persons, other than those for whose default in payment of taxes the land had passed to the state, to place themselves in a position by which they could acquire the title of the state to such lands by possession and payment of taxes. When a title became

thus vested in the state, actual occupants who were willing to pay taxes were invited to take advantage of this constitutional provision for two reasons: (1) To secure a more settled state of land titles, and (2) to enable the state to collect revenue from said lands for public purposes. Out of this policy grew the holding of this court that where title to land became vested in the state, parties holding such land by actual and continuous possession and the payment of taxes for specified periods could secure title thereto at any time before the same was redeemed or sold. It must be borne in mind, however, that this rule has been applied only in cases where there had been a proceeding in the name of the state for the sale of such land, and where the question of title to the land itself was involved. We are not inclined to extend this rule beyond the limits to which the court has gone in the past. We have not found where it has been applied to suits or persons having such an interest in the land, other than a claim of title thereto, as entitles them to redeem the same for the protection of their claims. Such is the case at bar. Here we have a creditor of the former owner in whose name the land was sold, and the trustees holding legal title thereto, who are clearly entitled to redeem, who instituted this suit for the purpose of setting aside an alleged sale made in a proceeding by the state, in which they were not parties, and who asked to be permitted to redeem. At the time of the institution of their suit, their right to redeem was clear and, as we have held, the proceeding on the part of the state to sell said land did not affect that right. The purpose of the plaintiffs' suit is to set aside a proceeding on the part of the state which had resulted in the execution of a deed which the appellant herein claims afforded color of title to the land covered by the deeds of trusts. Her claim is based entirely upon that deed and when the same is attacked, it seems that whatever right she had then acquired based upon such deed must be tested as to its effect of that date. While a void tax deed, or a like deed executed under a school commissioner proceeding, may be sufficient as color of title, the benefits thereof, as against any litigant other than the state, must be measured as of the date when a

suit is instituted to test the rights of the claimant thereunder. The reason for the rule which permits the maturing of title by possession and payment of taxes after the institution of a suit, confined as it is to school commissioner proceedings, is not present in this case and there is, in our judgment, no reason why the general rule that litigation must be determined as of the date of the institution of a suit should not be applied herein. We hold, therefore, that the appellant not having been in possession of the tract of 8 acres of land for the requisite five years, at the date of the institution of this suit, and not having paid any taxes on said land at that time, could not, thereafter and during its pendency, extend her possession and pay taxes to bring herself within the constitutional provisions as to transfer of title as against the plaintiffs herein, and that the rights of the respective parties herein, the Bank of Quinwood and its trustees, and the appellant, Elizabeth M. Burns, must be determined by the status of their claims as of the date of the institution of this suit in July, 1932.

The decree of the circuit court is affirmed so far as it saves to the plaintiffs the right to redeem, but is reversed so far as it attempts to impose the liens of the deeds of trust owned by the Bank of Quinwood upon the tract of 8 acres of land, as the property of Elizabeth M. Burns; and the case is remanded for the purpose of entering a decree setting aside the school commissioner proceeding and the deed executed thereunder to the end that the plaintiffs may, in some proper proceeding, redeem from the state of West Virginia the tract of 8 acres of land which is the subject of this controversy. Costs will be awarded to the appellees as the parties substantially prevailing.

*Reversed in part; affirmed in part; remanded.*