# CHARLESTON.

## STATE *v.* COLLINS, *et al.*

### Decided April 14, 1900.

TAX SALE—*Purchaser—Title—Rights of Grantee.*

Where the State has become the purchaser of lands delinquent for the nonpayment of taxes due thereon, by virtue of section 3, article XIII, of the Constitution, the forfeited title, in so far as vested in the State, becomes vested in any person (other than the person, his heirs or devisees, for whose default the land was returned delinquent) having title or claim to such land derived mediately or immediately from or under a grant from the State, and who, or those under whom he claims, have paid the State taxes charged or chargeable thereon for five successive years; and a suit cannot be maintained in the name of the State to sell such land for the benefit of the school fund. (p. 67).

Appeal from Circuit Court, Ritchie County.

Bill by the State against Creed Collins and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

DAVIS & WOOD, for appellants.

MERRICK & SMITH, B. F. AYERS, and SHERMAN ROBINSON, for the State.

DENT, JUDGE:

The State of West Virginia instituted its suit in chancery in the circuit court of Ritchie County for the purpose of selling, among others, a tract of land containing eight hundred and fifty-nine and one-fourth acres, for the benefit of the school fund. In the year 1870 and prior thereto this tract was on the land books in the name of A. M. Williams (misnamed for A. N. Williams), who had been the owner of the same. It was returned delinquent for nonpayment of taxes thereon for 1870, and on the 2d day of December, 1871, sold; and M. M. Hitchcox, W. Lambert, and J. P. Rogers, became the purchasers thereof, who, in default of redemption, obtained their deed on the 29th day of September, 1873. In 1871 and 1872 it was still on the land books in the name of A. M. Williams' estate. In 1874 it was again sold, for the taxes delinquent thereon for the year 1872, and was purchased by G. W. Lambert, who assigned his purchase to W. F. Atkisson and S. H. Piersol, J. P. Rogers and G. W. Lambert also executed a deed of special warranty to said Atkisson and Piersol, bearing date the 7th day of June, 1875. In 1873 it was still on the land books in the name of A. M. Williams' estate, and was returned delinquent for nonpayment of taxes, and sold in the year 1875 to the State. In 1874, 1875, and 1876 it was on the land books in the names of Hitchcox, Lambert, and Rogers. In 1877, 1878, and 1879 it was in the name of James E. Cross, who held under Atkisson and Piersol; in 1880 and 1881, in the names of Atkisson and Brown, who held under Cross; from 1882 to 1896, inclusive, in the name of W. H. Sherwood & Co., who held under Atkisson, Brown, and Piersol, who also had purchased from and held under the heirs of A. N. Williams, the original owner. In 1873 a suit was instituted to subject the real estate of M. M. Hitchcox to the payment of his debts, including a one-third interest in this tract of land. Hitchcox dying, his administrator brought suit to settle up his estate. In this suit the one-third of this land was decreed for sale, and A. S. Core purchased it. He failing to pay for it, a resale was ordered, and on the 26th day of December, 1888, Creed Collins became the pur-

chaser thereof. In 1890 Creed Collins had himself assessed with the one-third of said tract, and, together with his vendee, Jacob Daugherty, has kept the same on the land books down to the present time. In 1892 Collins and Daugherty brought suit against W. H. Sherwood to have the land partitioned,—one-third to themselves, and two-thirds to the other branch of the title. Sherwood answered, claiming title to the whole. Before this partition suit could be finally ended, this present suit was instituted. The present controversy is as to whether the State can. maintain this suit, and, if so, whether Sherwood is entitled to the whole, with the right of redemption thereof, or whether these appellants have not the better right to the one-third thereof. The circiut court determined the controversy in favor of Sherwood; hence the appeal.

The first question, and one of great importance, is as to whether the State had the right to maintain this suit to sell this tract of eight hundred and fifty-nine and one-fourth acres for the benefit of the school fund. Three times, as we have seen, it was sold for delinquent taxes: First, in December, 1871, to M. M. Hitchcox, W. Lambert, and J. P. Rogers, who obtained their deed therefor 29th of December, 1873; second, in 1874, for the taxes of 1872, and was purchased by G. W. Lambert, who transferred the same to W. F. Atkisson and S. H. Piersol, who obtained a deed therefor; third, in 1875, for the taxes of 1873, and was purchased by the State. W. H. Sherwood and those under whom he holds, claiming title under the original owner, and through him back through various alienations to the State, and also under the tax deed of 1874, and even as to the two-thirds under the tax deed of 1873, had these lands on the proper land books continuously, and paid taxes thereon from the year 1874 to the year 1897, inclusive, although they have not shown actual possession thereof, so as to permit the plea of the statute of limitations. Section 3, Article XIII., of the Constitution provides that "all title to lands in this State, heretofore forfeited or treated as forfeited, waste and unappropriated or escheated to the State of Virginia or this State, or purchased by either of said states at sales made for the non-payment of taxes and become irredeemable or hereafter forfeited or treated as forfeited or escheated to this State or puchased by it and become irredeemable, not redeemed, released or otherwise disposed of, vested and remaining in this State, shall be and is hereby transferred to and

vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), * * * for so much of said land as such person shall have title, or claim to, regularly derived, mediately or immediately, from or under a grant from the commonwealth of Virginia, or this State, not forfeited, which but for the title forfeited would be valid, and who, or those under whom he claims, has or shall have paid all state taxes charged or chargeable thereon for five successive years after the year 1865, or from the date of the grant if it shall have issued since that year." A valid tax deed is at least a mediate grant from the state of the title to lands conveyed, and a person holding thereby is properly described as holding under a state grant, within the meaning of the constitution; for the tax deed partakes of the nature of the original grant of the title forfeited. The object of this provision is to require the party claiming the benefit of the clause to found his claim of title on a state grant, and when he is able to do so, and has paid the taxes due it thereon, his title to the land, so far as the State is concerned, becomes indefeasible. The grantees in the tax deeds, however, claiming by virtue of a prior delinquency, were liable for the taxes of 1873; and by their non-payment and consequent forfeiture their prior purchases went with it, and by purchase vested their title in the State; and, the forfeiture occurring by their default, neither they nor their devisees could ever be reinvested with the title, except by redemption and full payment of taxes and interest. Such is not the case as to their *bona fide* alienees, for they are not excluded from the benefits of the section, and, not being excluded, are entitled thereto, although their title be derived from those who are excluded by reason of their delinquency. So that Sherwood and those under whom he claims, not responsible for the delinquency of 1873, either in its inception or consummation, having paid the taxes for five successive years under claim of title derived originally from the State, by operation of the section under discussion, are invested with all such title as the State acquired by purchase in 1875; and the State is thereby barred from maintaining this suit to sell this tract of land, or force a redemption thereof by payment of the delinquent taxes of 1873. The claimants and those through whom they derive title in the present case have paid the State taxes continuously for more than twenty years. This provision of the constitution was adopted to settle

the title of lands and reward the diligent taxpayer, by transferring to him, after five years' continuous payment of taxes under title or claim to such land, regularly derived from the state, any forfeited title that might be in the State, whether his title or claim was a branch or offshoot of the forfeited title, or entirely independent of and foreign thereto; debarring from its benefits only those, their heirs and devisees, for whose default the forfeiture or delinquency occurred. The words "which but for the title forfeited would be valid" clearly mean which but for the State's title under the forfeiture would be valid,—in other words, that, if the title forfeited in the State were out of the way, the title of the claimant would be good, and then the State's title is vested in him, to make perfect his own,—and were not intended to require the claimant's title to be necessarily derived from a different source than the title forfeited, provided the claimant was not responsible for the delinquency or forfeiture, or claiming as heir or devisee under one who was responsible therefor. The same principle applies to the Collins and Daugherty title, and it is entitled to equal benefits under this section of the constitution as the Sherwood title, provided the latter be not adverse and superior to the former, which question it is improper now to settle in this suit, but is reserved, together with all other questions or controversies existing between the claimants, to be determined and settled in the partition suit at the present time pending between them. The only matter at this time proper to determine is the status of the state as to the land in controversy; the conclusion being reached that such title to the land in controversy as the State may have derived from the tax purchase of 1875 having, by virtue of the constitutional provision aforesaid, been transferred to and vested in one or both the claimants thereto, the State has no longer any interest therein, and is without right to maintain this suit either to force a sale or redemption of such land. This question was not raised by the claimants either in this or the circuit court, by brief, answer, or otherwise, but the Court takes notice of the same on its own motion, for the enforcement of the constitution, that the title to lands may be settled in accordance therewith, and that these suits to sell State lands for the benefit of the school fund may not be illegally resorted to for the purpose of settling adverse claims to lands in which the State is in no wise interested, but of which it has been devested of all title by operation of the

constitution. The decree will be reversed, and the suit dismissed as to the tract of land in controversy. The State being in default, and not responsible for costs, none can be recovered.

*Reversed.*