# CHARLESTON.

### LITZ *et al* v. LOWRY *et als.*

Submitted March 24, 1910. Decided April 18, 1911.

1. TAXATION—*Failure to List Land—Forfeiture.*
    Land omitted from the land books for the years 1865 to 1874, inclusive, was forfeited, for such omission, by chapter 125 of the Acts of 1869, inflicting forfeiture for such omission for any period of five years, either prior or subsequent to the passage of said act, subject to certain exceptions therein specified. (p. 184).

2. SAME—*Lands Forfeited for Omission from Land Book—Acquisition.*
    A tract of land, granted in 1851, sold by the grantee by title bond, occupied by the vendee and successive assignees of his until 1873, omitted from the land books until 1875, conveyed by one of such assignees, in 1873, to his assignee and successor in possession, entered upon the land books for taxation in 1875, in the name of the grantee in the deed of 1873, forfeited for

69 W. Va.

omission from the land books from 1865 to 1869, was subject to acquisition by said last mentioned assignee and those claiming under him and succeeding him in possession, by transfer under section 3 of article XIII of the Constitution. (p. 184).

3. SAME.

Such assignee's deed constituted color of title, and the relation of privity between him and the vendor did not preclude him from acquiring title under said section, he having been under no duty to pay the taxes for the years for which the forfeiture occurred and being neither an heir nor devisee of any person or persons for whose default the land was forfeited. (p. 185).

Error to Circuit Court, Raleigh County.

Action by A. Z. Litz and others against James D. Lowry and others. Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

*McGinnis & Hatcher, File & File,* and *Campbell, Brown & Davis,* for plaintiffs in error.

*M. O. Litz, J. Lewis Bumgardner, Ritz & Ritz* and *Sanders & Crockett,* for defendants in error.

POFFENBARGER, JUDGE:

In an action of ejectment brought by A. Z. Litz and others, against James D. Lowry and James H. Gilmore, trustees, and Joseph Bolen, in the circuit court of Raleigh county, for the recovery of a small tract of land containing about 65 acres, the defendants demurred to the evidence of the plaintiffs, and the court, deeming the evidence sufficient to warrant a verdict, overruled the demurrer and rendered a judgment for the plaintiffs.

The case is peculiar in this, that both the plaintiffs and the defendants claim under the same title. Though the plaintiffs set up an additional claim under a different and strange title, their principal claim is under the same title which defendants claim. The history of that title is as follows: About the year 1849, Christian Cline entered upon the land in controversy and had a survey thereof made with intent to obtain a patent for it. The patent was issued August 1, 1851. Before he obtained the patent Cline sold the land to Amos Walker and gave him a

title bond therefore. Walker sold it to Sire Meadows who moved on the land when Cline left it. He sold it and transferred the possession to Peter Meadows, who sold it to Alias Read. Read sold to John H. Smith. In all these instances the title bond was assigned. On the 3rd day of April, 1875, John H. Smith sold the land to William Smith and executed to him a deed purporting to convey it. He also left the title bond with him. William Smith conveyed it to John A. Smith in the year 1883. John A. Smith conveyed it to John A. Cadle December 13, 1884. Cadle and others conveyed it to Litz and others December 16, 1890. Though the fact is questioned, this land was occupied and portions of it enclosed and cultivated successively, by the parties just named, from a time prior to April, 1875, until after the year 1890. The house on the land burned down at a date not fixed definitely by the evidence, but John A. Cadle testifies positively that he occupied the house and held possession of the land for Litz for a period of two years after he had conveyed it to him. The land appears on the land books for the first time in the year 1875. It seems to be admitted that, prior to that year, it never had been entered for taxation and that no taxes had been paid thereon. Christian Cline, in whom the legal title was vested by the patent issued in 1851, never conveyed the land to any of said parties. Moses C. Cline, one of his heirs at law, having obtained the interests of all the other heirs, conveyed it to Lowry and Gilmore, by deed dated March 29, 1907. These grantees placed Bolen on the land as their tenant and Litz and others brought this action.

The controling inquiry is whether the plaintiff's claim of title, by forfeiture, for non-entry of the land upon the land books for taxation, and transfer of the forfeited title to them by operation of section 3 of Article XIII of the Constitution, is well founded. We have already said this land was never entered upon the land books under the title of Cline or any claimant under that title until 1875. If any forfeiture had occurred prior to 1863, section 4 of Article IX of the Constitution of 1863 released it, since it released "all lands forfeited for the failure of the owners to have the same entered on the land books of the proper county and charged with the taxes chargeable thereon since the year 1831, where the tract does not contain

more than one thousand acres." This tract did not contain one thousand acres. An act of the legislature, passed on the 24th day of February, 1866, released "all persons and property, either real or personal, from all liability for taxes of 1861 to 1864, inclusive, in any county in which the same had not been assessed, or, having been assessed, the assessment had not been returned to the auditor's office. In this act there was an exception of lands owned by non-residents. By section 3 of chapter 125 of the Acts of 1869, it was made the duty of any person owning any real estate to cause the same to be entered upon the land books and charged with taxes, for the year 1832, or any year thereafter, before or after the date of the passage of that act, not released, paid or in any manner discharged. It then provided that "when any person owning real estate has not, or shall not have for five successive years, been charged on such books with taxes, on such real estate, the same, and all the title, right and interest of the owner, legal and equitable thereto, shall without any proceeding be absolutely forfeited to and vested in this state. Provided, however, that such owner may within one year after the passage of the said act cause such real estate to be charged with such taxes, chargeable for any such years heretofore, and thereby prevent a forfeiture for the failure so to charge the taxes for such years." This statute is clearly retroactive to and including the year 1865 as to all lands, as well as prospective. It says there shall be a forfeiture when any person owning real estate has not, or, for five successive years, shall not have been, charged with taxes. The preceding clause contains an exception of taxes previously released. Some other exceptions are made by this act, but this case does not fall within any of them. This land was not entered upon the land books at any time between 1865 and 1875, a period of more than five years. Obviously, therefore, the title was forfeited for such omission by the force and effect of this statute.

The title thus forfeited was transferred to and vested in the plaintiffs and those under whom they claim, if they were such persons as are mentioned as eligible transferees in section 3 of Article XIII of the Constitution, and had complied with the conditions found in either of the three clauses, creating classes of transferees for the purposes of that section. Clearly they

were in possession for more than ten years after the forfeiture occurred. Their possession was actual and continuous. That forfeiture extinguished the title of Christian Cline. His entire interest became vested in the state. If, therefore, the Smiths, Cadle and Litz, being in the actual possession of the land for more than ten years and paying all the taxes thereon as they did, were such persons as could take the forfeited title by transfer, it clearly vested in them. The first clause of said section says the forfeited title "shall be, and is hereby transferred to, and vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), for so much thereof as such person has or shall have had actual continuous possession of, under color or claim of title for ten years, and who, or those under whom he claims, shall have paid the state taxes thereon for any five years during such possession." When William Smith obtained his deed from John A. Smith, though it vested no legal title in him, he caused the land to be entered upon the land books and paid the taxes thereon. All of his successors did likewise. Prior to the acquisition of their deeds, they were under no duty to pay the taxes on this land. William Smith, the first grantee, had been under no such duty. The forfeiture did not result from any failure of duty on their part. They paid all taxes accruing after they received their deeds. They were remote assignees of Christian Cline, but not his heirs nor devisees. Hence they are not excluded by this exception. The alleged friendly character of their possession up to the date of the forfeiture does not preclude them from taking title under this clause. It does not require open, notorious, exclusive and hostile possession. It requires only actual and continuous possession. After the forfeiture there was no title in Christian Cline. They could not be his tenants, nor could they hold either adversely to him or in subordination to his title or for his benefit. All of his previous right, title and interest in and to the land became vested by the forfeiture in the state. Upon the happening of a forfeiture, the statute of limitations ceases to run between adverse claimants. The forfeiture produces a new order of things. If, before the forfeiture, title has been acquired by adverse possession, the state takes the title forfeited subject to the new title so acquired, but, if there is only one title by grant

and that is forfeited and no other has been acquired by adverse possession the title vests in the state free from all other claims, and the statute no longer runs as between the parties. "If at the time of the forfeiture or afterwards, the forfeiture is declared by law to enure to the benefit of the party in possession, a deed subsequently made by the commissioners would of course pass nothing to the purchaser. And so if at the time of the forfeiture, the claimants of the title so forfeited had been barred of their right to recover by the long continued adversary possession of the party holding, under the statute of limitations, the commonwealth would only take the title in the same plight and condition in which the claimants held it, and the commissioners' deed would be inoperative to convey to the purchaser any other or better right to recover. But if the party in possession had acquired no such rights at the time of the forfeiture, from that time his adversary possession and the statute of limitations must cease to run as against the commonwealth, and the commissioners' deed would pass her title thus acquired unaffected by the continued possession of the party holding with whatever claim of title." *Smith* v. *Chapman,* 10 Grat. 464. Such being the force and effect of the forfeiture, there could be no adverse possession while the title remained in the state. There was no outstanding title to which subsequent possession could be adverse, and this condition continued until the title again passed out of the state in some way. To obtain a transfer of the forfeited title, therefore, it was only necessary to have "actual and continuous" possession under claim or color of title for ten years and pay taxes for five. The plaintiffs and those under whom they claim had such possession under color of title and paid the taxes. Hence their title is clear.

This conclusion renders it unnecessary either to inquire whether any title vested in them under the Welch patent upon which also they rely, or to determine whether the possession under the title bond, or under the deed from John H. Smith to William Smith and subsequent deeds was adverse to Christian Cline or his heirs, questions extensively discussed in the briefs. The forfeiture and transfer gives them rather an academic character in this case.

In our opinion, the judgment is plainly right and will be affirmed.                                        · *Affirmed.*

BRANNON, JUDGE *(concurring):*

I concur with Judge POFFENBARGER that the plaintiffs can recover on title derived from forfeiture. But the question squarely arises, are they entitled to recover on title derived by adversary possession under the statute of limitations? I am clear that they are. I have always been a strong advocate of a liberal application of the statute of limitations in land matters. It has been about the only panacea for the ills which have afflicted for one hundred years all the country in Virginia and West Virginia west of the Allegheny mountains springing from the many conflicting grants, sometimes three or four deep, on the same land. I am not satisfied with the position that a vendee in actual possession under an executory contract, after he has paid the purchase money and is entitled to a deed, still holds not adversely to his vendor. I assert that it ought to be the law, and is, that such possession is adverse to the vendor. It is said not to be so in Virginia and West Virginia. Not so under the generality of expression in the decisions; but I do not find any actual decision pointedly so holding. True, Judge SNYDER, in stating the elements of adverse possession in *Core* v. *Faupel,* 24 W. Va. on page 244, did say so; but he was only speaking in a general way, and it was not the point of decision. As far back as *Boone* v. *Chiles,* 10 Pet. 177, it was held that such possession was not held in privity and for the benefit of the vendor. In *Jackson* v. *Kamp,* 1 Cow. 605, whilst it is held that a vendee under executory contract does not hold adversely to the vendor, yet it is said that when he has performed the conditions of his contract his possession is hostile. "After performance of a contract to purchase and an equitable title to a deed to the premises acquired, there is no good reason why the vendee's possession may not become adverse to his vendor. (*Briggs* v. *Prosser,* 14 Wend. 277.) Indeed, an agreement for conveyance, the consideration being paid, has been held to be tantamount to a deed as a foundation for adverse possession. (*La Frombois* v. *Jackson,* 8 Cow, 589; *Clapp* v. *Bromagham,* 9 *Id.* 530.)" These and others are old cases cited in Tyler on Ejectments, 878, 879, 884. I find in 1 Cyc. 1047, this: "While the law seems to be otherwise in some States, the decided weight of authority is to the effect that a vendee of land in possession

under a contract of sale, by parol or in writing, holds adversely to the vendor, from the moment of the payment or performance of the conditions of the contract; and if this possession is continued for the statutory period, the purchaser acquires title by statute of limitations." "After payment of the purchase money, however, the possession is presumed to be antagonistic to the vendor because all duty to him has been performed, and if it continues for the necessary period without some act of recognition or of subordination to the legal estate of the vendor, his right to action is barred." 1 Am. & Eng. Ency. L. 801, and cases cited. See also 1 Cyc. 1046. I observe in the very late work, 2 Ency. L. & P. 459, the following: "After the vendee has performed the conditions of the contract or bond for title and has become entitled to a conveyance, it is well settled that his continued possession will be deemed adverse to the vendor, in the absence of any recognition of the latter's title." A vast array of authorities is there cited for this proposition. Warvelle on Vendors, § 187, after stating that possession by a vendee is not adverse to the vendor, adds: "The full payment of the purchase price, however, removes the reason for the rule; and hence, where the consideration is paid and the owner consents that the purchaser may enter and hold the land as his own, such entry and possession cannot be deemed subordinate to the title of the vendor, but is adverse, and a practical disseizin. And it is immaterial, in a case of the kind, whether the contract be in writing or by parol, for the vendee, having discharged all pecuniary duty to the vendor, becomes clothed with an equity which renders his possession antagonistic both to the vendor and to strangers. If such possession is continued for the statutory period it will form a complete bar to the vendor's right of entry or action." To *Schafer* v. *Hanser,* 35 L. R. A. 835, holding that possession under a parol promise of a gift is adverse, is a note saying that "the doctrine almost universally accepted now is that one who enters by virtue of a parol gift, claiming as owner, continues for the statutory period in open, exclusive, adverse and uninterrupted possession thereby acquires perfect title," citing a host of cases. I therefore hold that the plaintiff, without regard to the deed purporting to convey the legal title from John H. Smith to William Smith, became vested with legal title by adversary possession under the title bond, and having

legal title acquired by adverse possession under the statute was entitled on that ground to recovery in this action. It is the law almost everywhere. As pertinent to this subject I will ask, where is the reason for saying that a vendee who has paid his purchase money and is entitled to a deed is not in possession adverse to the vendor? What interest has the vendor in the land? Whose possession is it? The statute, Code 1906, chapter 90, § 20, says that a vendor cannot at law recover possession from his vendee. This makes the possession that of the vendee, not of the vendor. It is the vendee's exclusive possession. One in possession under a title bond who has paid the purchase money is a freeholder. *Helmondollor's Case,* 4 Grat. 536; *Cunningham's Case,* 6 *Id.* 695. And I observe to-day for the first time that the Supreme Court of the United States away back in 1836 said this: "Equity makes the vendor without deed, a trustee to the vendee, for the conveyance of the title; the vendee is a trustee for the payment of the purchase money, and the performance of the terms of the purchase. But a vendee is in no case a trustee for the vendor, as to the possession of the property sold; the vendee claims and holds it in his own right, for his own benefit, subject to no right of the vendor, save the terms which the contract imposes; his possession is, therefore, adverse as to the property, but friendly as to the performance of the conditions of the purchase." *Boone* v. *Chiles,* 10 Pet. 177. With much more force can we say so under the statute which I have mentioned. The purchase money was paid in this case. It occurs to me to be a very refined doctrine, very technical, that in this case where there was a possession of more than fifty years the defendants can come in and claim this land—a peaceable possession—from which the law would presume a deed. *Riffle* v. *Skinner,* 67 W. Va. 75, and many cases cited on page 89. The title of the plaintiffs ought to be in peace after so great a stretch of time.

Another theory touching the statute of limitations. I incline to the opinion, pretty decidedly incline, aside from possession under the title bond, that after Smith conveyed to Smith in 1873 the possession under that deed was adverse to the vendor and those claiming under him. It was a deed purporting to convey the legal title, and did not possession under it give

notice of adverse claim? It so strikes me. Point 5 in *Pickens v. Stout,* 67 W. Va. 422, says that if one tenant in common by executory contract or deed conveying title sell to a stranger, that stranger is entitled to the benefit of adverse possession by open, notorious and exclusive possession. Surely as much so where one holding under a title bond makes a deed purporting to convey legal title. Smith and those under him have been in such possession under that deed twenty-nine years. Why have they not good title under that deed by adverse possession? The statute runs against the State under Code 1906, chapter 35, § 20.