# CHARLESTON.

STATE v. KATE PRESTON HAYMOND *et al.*

Submitted May 6, 1919.    Decided May 20, 1919.

1. TAXATION—*Disposition of Forfeited Lands—Sufficiency of Possession.*

   Actual and continuous possession of any part of any one of two or more contiguous tracts of land, forfeited to the State for non-entry for taxation and non-payment of taxes, by a person claiming all of them under color of title, is a compliance with the requirements of sec. 3, Art. XIII, Constitution, and sec. 40, ch. 31, Code, as to the character of the possession.    (p. 297).

2. SAME—*Forfeited Lands—Character of Possession—Constitutional and Statutory Provisions.*

   In such case the former owner of the forfeited title has no legal or rightful possession either actual or constructive, wherefore the possession of one seeking the benefit of such title by transfer under said constitutional and statutory provisions need not be such as is required to work an ouster or a disseizin of such former owner; and, as between the State and the occupant claiming by possession and payment of taxes, the forfeited title passes by the permission of the former.    (p. 297).

3. SAME—*Forfeited Lands—Possession by Railroad—Character of Possession.*

> Possession of a railroad company by a tenant and its subsequent improvement of the land by construction of a culvert, roadbed and temporary track, connecting in point of time with the previous possession by the tenant, suffices as to its character, for the purposes of the transfer provisions of the Constitution and statute, respecting forfeited land titles. (p. 299).

Appeal from Circuit Court, Monongalia County.

Bill by the State of West Virginia, by the Commissioner of School Lands of Marion County, for the sale of land, with answer by Kate Preston Haymond and others, claiming a right to redeem and answers by J. Walter Barnes and others, by Harry Shaw, and by the Fairmont, Morgantown & Pittsburgh Railway Company. From a decree granting a redemption to Kate Preston Haymond and others, and denying all title and right of the other answering parties, the Fairmont, Morgantown & Pittsburgh Railway Company appeals.

*Reversed and bill dismissed.*

*Henry S. Lively,* for appellant.

*M. L. Sturm* for the State.

*James A. Meredith,* for appellees Haymond and others.

POFFENBARGER, JUDGE:

The decree brought up by this appeal was entered in a suit instituted in the name of the State by the Commissioner of School Lands of Marion County, under the provisions of ch. 105, of the Code, for the sale of two small strips of land in the City of Fairmont, bordering on the Monongahela River, and described in the bill and proceedings as Lot No. 1, containing .061 of an acre, and Lot No. 2, containing .963 of an acre, as having been forfeited for non-entry and non-payment of taxes in the names of the heirs of Jonathan H. Haymond. Kate Preston Haymond and other heirs of Jonathan H. Haymond appeared and filed their answer to the bill, admitting the forfeiture, claiming right in themselves to redeem and praying permission so to do. J. Walter Barnes and others filed an answer claiming right of redemption as to Lot No. 1,

by virtue of a deed executed by Jonathan H. Haymond, dated February 14, 1849. Harry Shaw filed an answer in which he claimed himself and one B. G. Williams to have been former owners of part of lot No. 1, by possession and payment of taxes under a deed dated, May 13, 1902, and executed by B. F. Gaskins and others, and himself and other persons to have been former owners of Lot No. 2, by possession and payment of taxes under a deed executed by Benjamin G. Williams to L. C. Powell, Trustee, bearing date May 8, 1902. He further avers that his part of Lot No. 1 was acquired from him by condemnation proceedings by the Fairmont, Morgantown and Pittsburgh Ry. Co., in 1914, and that on September 1, 1905, he and his co-owners conveyed their part of Lot No. 2 to said railroad company. The railroad company also filed an answer claiming title in itself, denying forfeiture and praying dismissal of the bill. From a decree adjudging the title to have been forfeited in the name of the heirs of Jonathan H. Haymond, granting them permission to redeem the lands and denying title and right of redemption in any of the other defendants, the railroad company obtained this appeal.

By an order entered July 10, 1916, in the Circuit Court of Monongalia County, to which the cause had been transferred by an order previously entered in the Circuit Court of Marion County, it was referred to John Shriver, one of the commissioners in chancery of the Circuit Court of Monongalia County and also Clerk of the Circuit Court of that county. He took none of the testimony, however, for it was taken before a notary public in the City of Fairmont, in his absence, by agreement of the parties. After the evidence had been taken and transmitted to him, he made a report in which he found and held that the two tracts of land had been forfeited for non-entry and non-payment of taxes and that the Haymond heirs were entitled to redeem them. The appellant filed seven exceptions to this report, the first four of which challenged the correctness of the commissioner's conclusions and findings, while the fifth and sixth attacked the report

on special grounds, the taking of the testimony in the absence of the commissioner and disqualilfication of the commissioner by reason of his incumbency of the office of clerk of the circuit court. The seventh was general and indefinite. Sustaining the sixth exception and also the seventh, on the ground of a defect in the commissioner's notice, the court set aside the report, but, upon the pleadings and evidence filed in the cause, reached conclusions and findings identical with those set forth in the commissioner's report, and decreed accordingly.

The assignment of error based upon defectiveness of the commissioner's notice is not well taken. All of the evidence had been taken in the absence of the commissioner, under an agreement of the parties. The appellant had appeared, cross-examined witnesses and taken its own proof as fully and completely as it could have done or would have done, under the most formal and complete notice. The function of process and notice is either to bring parties into court, or afford them an opportunity to appear, and a voluntary appearance in any proceeding amounts to a waiver of notice. *State* v. *Thacker Coal & Coke Co.,* 49 W. Va. 140; *Mahany* v. *Kephart,* 15 W. Va. 609; *Harvey* v. *Skipwith,* 16 Gratt. 410. Lack of notice of the execution of an order of reference, constituting nothing more than a formal and harmless defect or irregularity, does not vitiate the report. *Taylor* v. *Dorr,* 43 W. Va. 351; *Gardner* v. *Field,* 5 Gray 600; *Kellogg* v. *Putnam,* 11 Mich. 344. Total lack of notice being insufficient to impeach a commissioner's report, when harmless, a mere defect in a notice, waived by appearance and procedure under it, consisting of the taking of full proof, as if the notice had been perfect, constitutes no ground for reversal of a decree founded upon the evidence.

Lot No. 1 is a triangular strip fronting on the river, not more than thirty or forty feet wide at the northeastern end, pointed at the southwestern end, and crossed by a highway bridge over the river near the narrow end. It consists of bluff, river bank and possibly a little beach and has no vis-

ible building or structure on any part of it, save the bridge. Lot No. 2 is a narrow strip bordering on the river and similar in character to Lot No. 1. At the northeastern end it is less than 100 feet wide and, at the other, not more than 30. There is no structure of any kind on it, unless it be the ends of the wing-walls of a culvert or bridge constructed over a small stream near the north end, by the railroad company, and a few railroad ties and rails temporarily laid on part of it. Generally speaking, both lots have been used for a half century or more, only as a dumping ground for refuse and garbage of various kinds. Numerous witnesses for the State and the Haymond heirs, well acquainted with the property for many years, some of them fifty or sixty years, say they have never seen any enclosure, use or occupancy of it, indicative of ownership. One or two of them say there was a small house or shack on the larger tract for awhile about the year 1863, but nobody knows under whose claim of title it was built or occupied.

The bill and the answer of the Haymond heirs proceed upon the theory that Haymond never parted with his title to the river front. Lot No. 2 lies between the river and the old road known as the Mill Road, back of which and on parts of the original Haymond tract, conveyed to divers people many years ago, there are numerous substantial improvements. One of these known as the "Old Pottery Building" and recently demolished, was included in the deed from Powell, Trustee, and others, to the railroad company. The Holt deed included two or three dwelling houses back of the Mill Road, which seem to be still standing and used. Back of Lot No. 1 there are very substantial buildings, but they are not included in the railroad company's acquisitions. At least two deeds executed by Jonathan H. Haymond, one to John A. Gallahue, dated July 6, 1847, conveying land back of Lot No. 2, and possibly within it, and another to Harrison and Elisha M. Hagans, dated August 12, 1847, and conveying land back of Lot No. 1, if not part of Lot No. 1 itself, made reservations respecting the river front. It is doubtful whether

the deed to Gallahue reserved more than a mere easement, but the other clearly excepts a narrow strip of land adjoining the river. These reservations or exceptions, however, together with the real or apparent non-use of the river front in Lot No. 1 and the strip of land between the Mill Road and the river in Lot No. 2, constitute the basis of the contention in favor of the State and the Haymond heirs.

The land in dispute has not been taxed in the name of Haymond or his heirs since sometime prior to the year 1872, and the Haymond title, if any remained undisposed of, has been forfeited for many years, and transferred to occupants under claim or color of title for the requisite periods of time, paying taxes for the requisite number of years, if such there were.

The railroad company holds a deed from John S. Scott, dated January, 4, 1906, for the point of Lot No. 1, above the bridge, and other land, constituting a single boundary. A small part of Lot No. 1, lying northeast of the bridge, it obtained from Harry Shaw and B. G. Williams by a condemnation proceeding, in 1914, after long litigation. For the residue, it holds a quit claim deed executed by Charles L. Barnes and dated, Oct. 21, 1905. By the same deed, Barnes conveyed to it a part of Lot No. 2 and several hundred lineal feet of additional river frontage adjoining Lot No. 2 at the southern end thereof. Clyde S. Holt, by a deed dated, Sept. 9, 1905, and L. C. Powell, Trustee, and others, by a deed, dated Sept. 1, 1905, conveyed the residue of Lot No. 2, to the railroad company. Scott's paper title, going to "the river," begins with a deed from Smith Crane and others to William W. Scott, dated, Aug. 22, 1865, and there has been possession and payment of taxes, under it, for a great many years, possibly from the date of the Crane deed. The Gaskins deed to B. G. Williams, dated, May 13, 1902, and the deed from Williams to Shaw, dated, January 2, 1903, conveyed a lot running from Water Street to the river, and, from 1902 until 1914, Williams and Shaw were admittedly in possession of all of it except the narrow

strip along the river and paid taxes on the whole of it. Such use as they and Scott made of the steep bluff along the river and possibly a few feet on top of it was not conspicuous and might not comply with the requirements of the law of adverse possession. The tracts or parcels conveyed, respectively, by Barnes, Holt and Powell and others to the railroad company are all contiguous, and the Powell deed rightfully conveys land outside of Lot No. 2, known as the "Old Pottery" property, of which the grantors of the railroad company had incontrovertible possession by a tenant, from the date of their purchase, until that of their conveyance to the railroad company, and that company held such possession for the period of five or six years after the conveyance, collecting rent from the tenant. Besides, commencing in 1908 or 1909, it graded a road-bed and laid a temporary track, for a considerable distance through that parcel of land and at least one other contiguous lot conveyed to it by the Holt deed. It also built a large concrete culvert on the property outside of Lot No. 2. The work of construction was no doubt delayed by the railroad company's difficulty in obtaining title to the right of way through the Williams and Shaw lot. Soon after that obstacle was surmounted, this suit was commenced, the summons having been made returnable to October Rules, 1915. For some reason not clearly revealed, the work of construction ceased some years ago, but the evidence of it remains on the ground.

The strips and lots of land conveyed by Powell and others, Holt and Barnes are all contiguous. They include all of Lot No. 2, and extend beyond it to another strip conveyed to the railroad company by Jamison and Crowl, which connects with still another conveyed by Barnes, lying partly within and partly without Lot No. 1, and adjoining the lot obtained from Williams and Shaw by the condemnation proceedings. This makes the Barnes lot within Lot No. 1 contiguous. The actual possession of part of the land conveyed by Powell and others. and one of the lots conveyed by Holt is regarded in law as actual possession of all these contiguous tracts or lots. *Camden* v. *West Branch Lumber Co.*, 59 W. Va. 148; *State* v.

*Harman,* 57 W. Va. 447, 463; *Overton* v. *Davisson,* 1 Gratt.
212; *Sharp* v. *Shenandoah Co.,* 100 Va. 34; *Rich* v. *Braxton,*
158 U. S. 375.   Counsel for the State and for the Haymond
heirs erroneously assume that the actual possession required
by sec. 3 of Art. XIII of the Constitution and sec. 40 of ch.
31, of the Code, as an element and condition of the transfer
of forfeited land titles, must have all the requisites of adverse
possession, within the meaning of the law of disseizn and
ouster.   As to lands forfeited to the State for non-entry and
non-payment of taxes, or acquired in any such manner as to
make them transferable under the Constitution and statute,
there can be no such thing as adverse possession. *Lewis* v.
*Yates,* 62 W. Va. 575; *State* v. *Morgan,* 76 W. Va. 92; *State*
v. *Harman,* 57 W. Va. 447; *State* v. *King,* 64 W. Va. 545;
*Levasser* v. *Washburn,* 11 Gratt. 572; *Staats* v. *Board,* 10
Gratt. 400.   As defined by the Constitution and the statute
themselves the requisites of possession for such purpose are
only actuality and continuousness.   Forfeiture vests title in
the State and the State cannot be disseized nor ousted by any
kind of possession.   Continued possession and payment of
taxes by the former owner, after forfeiture, amounts to
nothing. *Lewis* v. *Yates,* cited.   Having occasioned the for-
feiture, he cannot take the forfeited title by transfer.   Con-
stitution, Art. XIII, sec. 3; Code, ch. 31, sec. 40.   By actual
and continuous possession and payment of taxes, one who has
not caused the forfeiture may obtain the title from the State,
not against her will, but agreeably to her will.   He is invited
and encouraged to comply with the conditions vesting the
forfeited title in him.   "For the present purpose, it is not a
question of the statute of limitations."   Judge BRANNON in
*State* v. *Harman,* cited.   Even in the law of adverse posses-
sion, possession of one of two or more contiguous tracts is
possession of all, subject to this qualilfication, that, in the
case of conflicting paper title, the possession under the in-
ferior title, to work an ouster, must be within the interlock,
the land covered by both titles. *Camden* v. *West Branch
Lumber Co.,* cited. *Overton* v. *Davisson,* cited.   The authori-
ties relied upon by counsel for the State and the Haymond

heirs, in resistance of the effect of actual possession of one
of several contiguous tracts, simply affirm and apply this
qualification of the general rule. It has no application here,
for the Haymond heirs had no title after the forfeiture. As
they were no longer seized, there was nothing of which to
disseize them, nor anything from which to oust them. Hence,
the actual possession of the occupants extended to the limits
of their color of title, under the common law rule as to pos-
session in the absence of a conflict of titles, by permission of
the State. Such also was the effect of possession above the
Mill Road by occupants whose color of title included parts
of the road and of the land between it and the river. The
Scott title went to the river and there was possession, accom-
panied by payment of taxes, for a great many years, vesting
the forfeited Haymond title in the occupants to the full ex-
tent of their color of title. Williams and Shaw held possession
and paid taxes under a deed going to the river for a period
amply sufficient to vest the forfeited title in them and their
title to part of the land was acquired by the railroad company.
From 1881 to about 1897, Thos. D. Harden occupied and
used the "Old Pottery" property under deeds extending to
the river. For the purposes of this litigation, that possession
extended to the river. The decision cited for the proposition
that a street or road between two tracts of land renders them
non-contiguous, or denies the efficacy of a deed for both, as
color of title, *Bailey* v. *Carlton,* 12 N. H. 9, does not sustain it.
Since a public road is no more than an easement, the tracts
between which it runs are necessarily contiguous.

Continuity of the possession of the railroad company is
sufficiently established. Before January 1, 1909, it began the
grading of its road-bed and afterwards laid a temporary
track on it, which still remains there, and the culvert con-
structed across the stream is a substantial structure. Both
clearly indicate devotion of the property to railroad pur-
poses. In addition to this, the corners, except at the river,
are substantially marked, and, recently, conspicuous notices
not to dump refuse on the river bank have been put up.
Besides, they had possession of the property conveyed by

Powell and others, through a tenant, Hentzy, for five years after the date of that deed, which period connects with the date of the grading and track laying.

The period of actual continuous possession of all the parcels as herein defined, except the Scott and Williams and Shaw lots, has been amply sufficient and the taxes thereon have been regularly paid. Scott and Williams and Shaw clearly had title by possession and payment of taxes, which the railroad company has acquired.

When this state of the title was shown, it was the duty of the trial court to dismiss the suit as to the parcels of land in question. Code, ch. 105, sec. 6. Hence, the decree complained of will be reversed and the bill dismissed.

*Reversed, and bill dismissed.*