*State ex rel.* PHILIP B. MAHAFFEY *et al.*

*v.*

HARRY BATSON, *Assessor,* etc.

(No. 9758)

Submitted September 5, 1945. Decided October 23, 1945.

*Harold A. Ritz* and *Jed W. Robinson,* for petitioners.
*Ira J. Partlow,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for respondent.

Fox, Judge:

In this original proceeding in mandamus, the relators seek to compel the respondent, the Assessor of Taylor County, to enter upon the land books of said county for the purposes of taxation, and extend taxes on the valuation thereof, two certain parcels of real estate situate in said county. The two tracts of land involved were formerly owned by Hecla Coal & Coke Company, a cor-

poration, and were conveyed by it to the relator Mahaffey, by deed dated December 30, 1941, and recorded on that day. On the basis of that deed and its recordation, relators claim that upon the demand or request of Mahaffey the land should have been entered in his name upon the land books of Taylor County for the year 1945, assessed with taxes for said year, and back-taxed for the years 1942 to 1944, both inclusive.

The facts of the case are not disputed, and may be stated as follows: In 1932 the Hecla Coal & Coke Company was the owner of a tract of 194.75 acres of land, and 757.5 acres of coal adjoining said land, situate in Taylor County. This real estate was entered on the land books of said county for said year, and taxes extended on the valuation thereof. Taxes were not paid by reason of which the properties were returned delinquent, and were thereafter sold to the State by the sheriff of said county in December, 1934, and not redeemed within the statutory period of one year, or otherwise. Since that time the lands have been entered on the land books of said county as required by Code, 11-4-13, as amended by Chapter 40, Acts of 1933, and Chapter 60, Acts of 1939, but no taxes extended. Of course, the tax sale and the failure to redeem vested title to said land in the State of West Virginia. On December 30, 1941, Hecla Coal & Coke Company conveyed to P. Mahaffey, who is the same person as the relator Mahaffey herein, the two tracts of real estate, and in said deed it is specifically stated that the property conveyed had been sold to the State for the aforesaid delinquency, and the right to redeem the same was specifically conveyed to the grantee, and pains taken to guard against any character of liability on the part of the grantor by reason of the delinquency and sale aforesaid. It clearly appears, therefore, that the relator Mahaffey took title to said properties with full notice of the then existing state of the title. On February 28, 1945, Philip B. Mahaffey and his wife conveyed to Nathan Goff the two tracts of real estate above mentioned; and on March 23, 1945, Nathan Goff

conveyed to Philip B. Mahaffey 157.41 acres of the 194.75-acre tract aforesaid, reserving the oil and gas therein, and 152.41 acres of the coal, thus vesting in Goff title to the coal, except five acres, in the 194.75 acres, and the 757.5 acres. It will be noted that on the 1st day of January, 1945, the beginning of the assessment year, claim of title to these properties was vested in the relator Mahaffey. It is also averred in the petition that Mahaffey and Goff took actual possession of these properties at the dates of the respective deeds to them, and continued such possession up to the date of the filing of their petition herein.

On May 1, 1945, Mahaffey made demand on respondent that he enter the above-mentioned properties on the land books in his, Mahaffey's, name for the year 1945, and that respondent back-tax the same for the years 1942, 1943, and 1944, and on May 3, 1945, paid that transfer fee. Some question is raised as to the failure of relator to pay the transfer fee at the time he made the demand aforesaid, but inasmuch as the fee has been paid, we attach no importance to this point. The respondent refused to enter the land on the land books as relator demanded, which refusal, of course, prevented the properties from being back-taxed for the three preceding years.

On this state of facts this proceeding was instituted. The petition does nothing more than to aver what appears above, and alleges Mahaffey's right to have the lands entered on the land books and taxes extended thereon, and have the same back-taxed for the three years preceding, the result of which would be to permit the relator to pay taxes on said lands for four years, namely, the years 1942 to 1945, both inclusive. The prayer of the petition is that a writ of mandamus issue directing and requiring said assessor to enter said lands upon the land books of said county, in the name of Philip B. Mahaffey, for the year 1945, and duly assess and charge the same with taxes assessable thereon for said year, and

the back taxes assessable thereon for the years 1942, 1943, and 1944, and for such other relief as may be meet for the protection of their claim to said lands.

The State, through its attorney general, appeared and made defense on the part of the respondent, and interposed his demurrer to the relators' petition, setting up these specific grounds therefor: (1) That the said real estate, having been sold to the State in the year 1934 for the nonpayment of taxes and not redeemed, and title thereto being thereby vested in the State, the same was not subject to assessment and taxation for the year 1945, nor for back-taxes for the three preceding years in the names of the relators; (2) that said lands having been placed on the land books of said county, although no taxes were extended thereon after the year 1934, pursuant to the provisions of Code, 11-4-13, as amended, the said properties were not liable for taxation for the years 1942 to 1945, both inclusive, under Code, 11-3-5, as amended by Chapter 61, Acts of 1933, until redemption and payment of prior taxes chargeable against said properties had been made as required by law; (3) that relator Mahaffey being acquainted with the fact that the title to the properties aforesaid was vested in the State of West Virginia, cannot rely upon his deed as color of title, within the meaning of Section 3, Article XIII of the Constitution, for the purpose of defeating the State's claim for taxes chargeable against said properties; (4) that relators have a complete and adequate remedy pursuant to law under Chapter 11A, Article 4 of Michie's Code, 1943, Chapter 140, Acts of 1945; (5) that there is no statutory or constitutional provision authorizing the assessor of said Taylor County to enter the land on the land books in the name of the relator Mahaffey; (6) that the petition does not allege any facts in support of the allegation of actual and continuous possession; and (7) that the petition does not disclose a clear legal right to the relief prayer for. Then, without waiving its demurrer, the respondent filed his answer in which

the main allegations of the relators' petition are admitted; and avers that the relators have a full, complete and adequate remedy to protect their interests in said land by redeeming the title from the State. The contention is also stressed in the answer that the relators purchased the said properties from Hecla Coal & Coke Company with actual notice of the state of the title, and that the same was vested in the State of West Virginia, and that the relators do not have any right to have the lands entered upon the land books in Mahaffey's name.

It is quite obvious that the decision of this case requires consideration of the background and purposes of Section 3 of Article XIII of the Constitution of this State, reading as follows:

"All title to lands in this State heretofore forfeited, or treated as forfeited, waste and unappropriated, or escheated to the State of Virginia, or this State, or purchased by either of said States at sales made for the non-payment of taxes and become irredeemable, or hereafter forfeited, or treated as forfeited, or escheated to this State, or purchased by it and become irredeemable, not redeemed, released or otherwise disposed of, vested and remaining in this State, shall be, and is hereby transferred to, and vested in any person (other than those for whose default same may have been forfeited or returned delinquent, their heirs or devisees), for so much thereof as such person has, or shall have had, actual continuous possession of, under color or claim of title for ten years, and who, or those under whom he claims, shall have paid the State taxes thereon for any five years during such possession; or if there be no such person, then to any person, (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), for so much of said land as such person shall have title or claim to, regularly derived, mediately or immediately from, or under a grant from the Commonwealth of Virginia, or this State, not forfeited, which but for the title forfeited would be valid, and who, or those under whom he

claims has, or shall have paid all State taxes charged or chargeable thereon for five successive years, after the year 1865, or from the date of the grant, if it shall have issued since that year; or if there be no such person, as aforesaid, then to any person (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), for so much of said land as such person shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year 1865; and have paid all State taxes charged or chargeable thereon for said period."

It is unnecessary for us to state the reasons which prompted the framers of our Constitution to adopt this section. These reasons have been more or less elaborately discussed in *McClure v. Maitland*, 24 W. Va. 561; *Coal Co. v. Howell*, 36 W. Va. 489, 15 S. E. 214; and referred to in *Bank of Quinwood v. Becker*, 119 W. Va. 534, 194 S. E. 849; and *Sims v. Fisher*, 125 W Va. 512, 25 S. E. 2d 216.

It will be noted that the section of the Constitution above quoted does not permit a person to take advantage of the provisions thereof if he has been responsible for the default which resulted in title to real estate vesting in the State; and this inhibition extends to his heirs and devisees, but no further. This Court has held that an assignee of the title of the former owner may take advantage of the provisions of this section. The relator Mahaffey is a grantee or assignee of the corporation whose default created the necessity for the sale to the State, resulting in finally vesting in it title to the properties involved. The corporation in default could not have the lands entered in the land books in its name, pay taxes thereon for five years, with concurrent possession, and relieve itself of the taxes for which the land was sold and subsequent taxes; but there is nothing in the law which prevents its grantee from acquiring title in that manner, as provided by Section 3, quoted above. This is clearly held in *State v. Board*, 111 W. Va. 562,

163 S. E. 57, 58, and is supported by *State v. Collins,* 48
W. Va. 64, 35 S. E. 840, and *Litz* v. *Lowry,* 69 W. Va.
181, 71 S. E. 263.  In *State v. Board, supra,* this Court
said: "It is further urged on behalf of the state that the
claimant cannot have the benefit of the above quoted
constitutional provision [meaning Section 3 of Article
XIII of the Constitution] and the statute effectuating
the same, because the petitioner does not claim under
a title hostile to the delinquent Lopinsky title but that
she claims through mesne conveyances under Lopinsky.
This position likewise is not well taken.  The constitu-
tion does not exclude such claimant, whether a direct or
remote alienee or assignee of the person in whose name
the land was returned delinquent.  The constitution
excludes only heirs and devisees of such person."  In
*Litz v. Lowry, supra,* a tract of land was granted in 1851,
and sold by the grantee by title bond, omitted from the
land books until 1875, and then entered on the land
books for that year in the name of a grantee in a deed
made in 1873, and it was held that this land was subject
to acquisition, under Section 3, Article XIII of the Con-
stitution, by the last-mentioned grantee or assignee, and
those claiming under him.  It was further held:  "Such
assignee's deed constituted color of title, and the relation
of privity between him and the vendor did not preclude
him from acquiring title under said section, he having
been under no duty to pay the taxes for the years for
which the forfeiture occurred and being neither an heir
nor devisee of any person or persons for whose default
the land was forfeited."

If the grantee or assignee of the party for whose de-
fault real estate is sold, or the title otherwise vested in
the State of West Virginia, is not precluded from taking
the benefit of the provisions of Section 3 of Article XIII
of the Constitution, we are unable to see how we can
prevent him from taking the action necessary to place
himself in position to take advantage of the provisions of
said section.  In *State v. Haymond,* 84 W. Va. 292, 100
S. E. 81, 83, this Court said: "By actual and continuous

possession and payment of taxes, one who has not caused the forfeiture may obtain the title from the State, not against her will, but agreeably to her will. He is invited and encouraged to comply with the conditions vesting the forfeited title in him." This is in line with the explanation given in the older cases as to the motives which prompted the adoption of Section 3 of Article XIII of the Constitution. When the Constitution was framed, adopted, and ratified, it was certainly the policy of the State to encourage people to take advantage of the provisions of this section, in order to settle land titles, and to place the properties in the hands of those who would develop them and pay taxes. If we say that a person, other than those for whose default the land became vested in the State, may acquire title thereto, under claim and color of title, by taking possession thereof, and paying taxes for five years, how can we say that he is not entitled to have the lands entered on the land books so that he may pay taxes? We know of no method by which taxes on real estate can be paid other than by having it entered on the land books and taxes extended on the valuation thereof. Such has always been, and is now, the sole and only method of collecting land taxes in this State and in Virginia. If a person acquires land under a tax deed or otherwise, and fails to have it entered on the land books for the purpose of taxation for as much as five years, then under another provision of the Constitution, Section 6 of Article XIII, his title becomes forfeited to the State. If a person's land is sold by a sheriff of a county, and the person in whose name it is sold desires to contest the tax deed, or a sale to the State, he must keep the land on the land books in his name, otherwise it becomes forfeited to the State for nonentry at the end of five years. "Where two or more persons claim the same land under adverse titles of color of title, if either desires to protect his title from forfeiture he must enter the land on the assessor's book in his name and pay the taxes thereon. The payment of taxes on such land by an adverse claimant will

not protect other titles from forfeiture. Each claimant must enter the land and pay the taxes on it in his own name." *Simpson v. Edmiston*, 23 W. Va. 657; see also *Stockton v. Craig*, 56 W. Va. 464, 49 S. E. 386; *State v. Harman*, 57 W. Va. 447, 50 S. E. 828; *Webb v. Ritter*, 60 W. Va. 193, 54 S.E. 484; *State v. West Branch Lumber Co.*, 64 W. Va. 673, 63 S.E. 372.

It is true, of course, that where land is sold to the State and not redeemed, it is proper to place it on the land books, but improper to extend taxes on the valuation thereof in the name of the former owner, and a sale subsequently made on the basis of such an unlawful assessment is void. Code, 11-4-13, as amended; *Totten v. Nighbert*, 41 W. Va. 800, 24 S.E. 627; *State v. Belcher*, 53 W. Va. 359, 44 S.E. 216; *State v. McEldowney*, 54 W. Va. 695, 47 S.E. 650. However, this does not mean that the same land cannot be entered on the land books in the name of an assignee of the former owner and taxes extended thereon; nor do we think the statute should be construed to mean that if a grantee of the former owner desires to contest a sale to an individual, or to the State, he may not have the right to keep his land on the land books in order to avoid future forfeiture. The provisions of our statute which are intended to prevent taxes being charged to a former owner after sale and purchase by the State were, of course, intended to prevent a former owner from evading taxes already accrued and unpaid, including those for which the land was sold. The same provisions of the statute, Code, 11-4-13, as amended, provide that when real estate is sold to an individual for taxes, the officer whose duty it is to make out the land books shall continue to enter, classify, and value such real estate annually on the land books in the name of the former owner, until the purchaser obtains a deed therefor, and he shall then enter the real estate so purchased in the name of the purchaser. In such a case we are met with the holding in *State v. West Branch Lumber Co.*, *supra*, which is that: "Though failure of a former owner of land, conveyed

by a fatally defective tax deed, made pursuant to a sale by a sheriff for delinquency, to keep the land taxed in his own name and pay the taxes for a period of five successive years, works a forfeiture of the title, the deed is conclusive evidence against the state that the title of the former owner is in the tax deed grantee, and she cannot maintain a suit to sell the land as forfeited." This clearly implies that in case of a void tax deed, the former owner, if he would contest such sale, must keep his land on the books, although Code, 11-4-13, as amended, says that it must be transferred to the purchaser, but nowhere says that it may not also be retained on the land books in the name of the former owner. It is only where land has been sold to the State that it may not be entered on the land books and taxes extended, in the name of the former owner.

The statutes on the question, the constitutional provision itself, and the decided cases create considerable confusion; but we think we are on solid ground when we say that Section 3 of Article XIII of the Constitution clearly contemplates that the grantee or assignee of the former owner, who is in default, may acquire title by transfer, where he has paid taxes for five successive years, and has been in actual, continuous possession thereof during such period. If this theory be conceded, then, as stated above, it must follow that such a grantee or assignee has the right to have the land entered on the land books, not in the name of the former owner, but in his own name and to have taxes extended. That section was placed in the Constitution for some purpose, and it seems to us that the position taken by the respondent herein, if sustained, would completely nullify the same. The contention that Code, 11-4-13, as amended, prohibiting the entry of land sold for taxes and purchased by the State, except as provided for therein, and that an alienee or assignee of the former owner may not have his land entered on the land books and taxes extended thereon would, as indicated in *State* v. *Board*, *supra*, be in conflict with Section 3 of Article XIII of

the Constitution. To give any meaning whatever to the last clause of Section 3, it must be held that where a person has claim and color of title to a tract of land, and is not the person for whose default the land was sold or forfeited, he is entitled to have such land entered upon the land books, not only to qualify under the Constitution, to take the benefit of the transfer provisions thereof, but to protect his title against forfeiture as well.

But it is vigorously contended that the deed which relator Mahaffey obtained from Hecla Coal & Coke Company was not color of title. It is argued that what relators are now doing constitutes an effort to evade the payment of taxes which have accrued on this land from 1932 to 1941, inclusive. Section 57 of Chapter 140, Acts of the Legislature, 1945, releases taxes prior to 1936, so that apparently what respondent fears is that relators are seeking to evade the payment of any taxes on this property for the years 1936 to 1941, both inclusive, which, according to an exhibit filed with his answer, amount to a substantial sum of money. This may be the purpose of relators, but it cannot be termed a fraudulent purpose, because it is one recognized by the Constitution itself. It would be a rare case indeed where a transfer of title under the Constitution would not leave in its trail unpaid taxes, which the former owner should have paid. The policy of the State has been to lose these taxes, in order to get land titles settled, and the land in the hands of persons who will develop the same and pay taxes thereon. So far as we can see from this record, there is nothing indicating any fraudulent intent or purpose, and it is fair to say that respondent does not contend that there is actual fraud, or even constructive fraud involved. He does seek to influence our decision by pointing out the effect of allowing relators' contention to prevail. In this connection, it is not improper to say that the State has in its hands the means by which it can prevent any loss to the State. In no aspect of the case can it be said that the State is now barred from selling these lands in a school commissioner's proceeding.

In support of the theory that the purpose which the relators may have in mind should have some bearing on whether the writ should be awarded in this case, we are cited to *State* v. *King*, 77 W. Va. 37, 87 S. E. 170. That was a case where a deed for land was made by a person to a trustee for himself, and that deed was attempted to be made the basis of a claim for transfer of title to the grantee under the Constitution, by reason of his alleged possession and payment of taxes. Of course, it was held that was an attempted fraud upon the rights of the State. We are also referred to *State* v. *Altizer Coal Land Co.*, 98 W. Va. 563, 128 S. E. 286, wherein there was alleged fraudulent manipulation by the former owner, and there also the transfer claimed was denied. We see no parallel between those cases and the case at bar. Here the relator Mahaffey did nothing more than purchase land and mineral, title to which he knew was in the State, but which, presumably, he also knew he could redeem by the payment of accrued taxes. Nothing is concealed in this transaction, and he now seeks to have this land placed on the land books in his name, and, through the method of back-taxing, to effect a payment of taxes for the same period during which he claims to have been in actual and continuous possession. According to relators' contention, if they should continue in possession for another year, and pay taxes for an additional year, they would have been in possession for five years, and would have paid taxes for the same period, and, therefore, may hereafter claim the title to said lands from the State through transfer by operation of law to them. We are not now passing upon that question. Whether in such circumstances the title should be so transferred to them under the Constitution can only be determined in a proper proceeding on the part of the State to sell this land under the provisions of Section 4, Article XIII of the Constitution, which requires that the title to all such land shall remain in the State until sale thereof is made to the highest bidder, in a proceeding in the circuit court of the county in which the land, or a part thereof, is situate. We assume, of course, that this provision does

not apply to land the title to which is transferred under Section 3 of Article XIII. When, if ever, such a proceeding is instituted, it will be in order to test questions of color of title, possession, payment of taxes, and other related matters.

While we are of opinion that relators are entitled to have the real estate in question placed upon the land books for the year 1945, and to have taxes extended thereon for that year, so that they may pay the same, we do not think it follows that they are entitled to have the land back-taxed for the years, 1942, 1943, and 1944. It is true that Code, 11-3-5, as amended, provides for the back-taxing of land and personal property omitted from the land and personal property books, but we do not think it was intended that this statutory provision should extend to anything more than cases of omission. It is there provided that, "When the assessor shall ascertain that any real or personal property in his county liable to taxation, other than that mentioned in the next succeeding paragraph, has been omitted from the land or personal property books for a period of less than five years, he shall make an entry thereof in the proper book of the year in which such omission was discovered, and assess the same according to the rule prescribed in section one of this article, and shall charge the same with all taxes chargeable against it at the rate of levy for the year or years the same was omitted, together with interest thereon at the rate of six per cent per annum for the years the same was omitted from the books." This does not, in our opinion, cover a case where the land has been sold to the State and not redeemed. In such a case the statute makes provision as to how it shall be entered on the land books. If the statute is followed, it is never off the land books, because it is expressly required that the same be carried on the land books in the name of the former owner, but that taxes shall not be extended. That being true, there was no omission to which Code, 11-3-5, as amended can be applied. Furthermore, we are of opinion that the Constitution

contemplates that if one would take advantage of the transfer provisions of Section 3, Article XIII of the Constitution, possession and payment of taxes must be concurrent. Taxes cannot be paid without the same appearing on the land books, and that of itself is notice to tax-collecting officials that someone is making a claim to the land involved, and is notice to the State to assert any rights it may have as against such lands, in advance of the period when possession and payment of taxes may operate to transfer the State's title to the person in whose name the land is charged. The actual and continuous possession may be notice to people residing near the land, but, in practice, may not be notice to tax-collecting officials. Payment of taxes and possession should coincide. We know of no provision of the statute which, under the guise of back-taxing, authorizes the payment of taxes to cover a period during which possession is claimed. The statute which allows back-taxing, we think, only applies to cases where property is omitted, and, as stated above, we are assuming that this land was never omitted from the land books of Taylor County, although since the title passed to the State, taxes have not been extended.

We are therefore of the opinion to award a peremptory writ in mandamus, requiring the Assessor of Taylor County, to enter upon the lands books of said county for the year 1945, the real estate in question, and place a valuation thereon, and extend taxes for said year; but to decline the prayer of the petition by which relators seek to have said lands back-taxed for the years 1942, 1943, and 1944. We will therefore mold and award the peremptory writ in accordance with these views.

> *Writ awarded as to assessment for 1945;*
> *otherwise denied.*

On petition for rehearing:

We are asked to review our holding that the relator is not entitled to have the real estate involved back-taxed for the years 1942, 1943 and 1944, and the case

of *Stiles* v. *Layman*, 127 W. Va. 507, 33 S. E. 2d 601, is cited in support of relator's petition for rehearing. It is true that in that case we held that a transfer had been effected under Section 3 of Article XIII of our Constitution by five years' possession and payment of taxes, one year's payment of taxes having been made through back-taxing. We think that case is distinguishable from the case at bar. Here, the relator has not paid the taxes for the years mentioned, and asks to do so through the employment of a method which, in our opinion, is not warranted by statute law or otherwise. The decision in the *Stiles* case, while recognizing and giving effect to an irregular payment of taxes, does not, in our judgment, justify the contention made that we are thereby bound to recognize the legal right of a claimant to have land back-taxed so that he may thereafter pay taxes.